## Shimer *et al.* versus Jones *et al.*

*What notice to sue will discharge surety.—Married woman entitled to personal notice.—Notice to husband not sufficient.*

1. A surety upon a note is not discharged by notice to the holder to sue the principal debtor, unless the notice and the evidence of it are so clear and distinct that the meaning of the surety can be at once apprehended without explanation or argument.

2. A married woman is entitled to such notice on account of her separate estate, as any other person would be, either from the party interested or some one authorized by him to give notice, and notice to the husband alone, without

[Shimer *et al. v.* Jones *et al.*]

more, is not notice to the wife; though if intended for the wife and delivered to the husband for her, it is a question of service merely.

3. Where the proof of notice relied on to discharge a surety from a note held by a married woman, was the admission of the husband made after the alleged notice, that the surety had called upon him and told him to bring suit upon the note immediately or he would be no longer responsible as surety, it was held insufficient: so also were the admissions of the wife that her husband had informed her of his conversation with the surety as to what he wanted him to do with the note, not communicated to her as a warning or as notice from the surety, nor by the husband as his constituted agent.

4. It was therefore held error to instruct the jury that if all the testimony on the subject of notice was believed, in point of law the notice would be sufficient to discharge the defendant: they should have been instructed that it was insufficient.

5. Upon the question of the solvency of the principal debtor, the attention of the jury must be restricted to the time when the notice was given to sue out the note, and not to the time when it matured.

ERROR to the Common Pleas of *Northampton county.*

This was an action of *assumpsit* by Augustus B. Shimer, John S. Oberly, and Nathan Grim, executors, &c., of Abraham Shimer, deceased, to the use of John S. Oberly and Catharine his wife, in right of said Catharine, against Josiah Jones, Leonard Schweitzer, and William Gwinner.

The plaintiffs declared on the joint promissory note of defendants, dated April 1st 1858, for $2150, in favour of Abraham Shimer, deceased. Abraham Shimer died in 1859, having first made his will, which was duly admitted to probate, and letters testamentary granted to Augustus B. Shimer, John S. Oberly, and Nathan Grim, the executors therein named. The promissory note passed into their hands, and in December 1859 was by them delivered to Catharine Oberly, wife of John S. Oberly, and one of the daughters and legatees named in the will of the deceased, as part of her share. April 14th 1860, the above suit was brought to recover the balance on said promissory note, the sum of $129 having been theretofore paid, and the further sum of $1439, by the assignees of Josiah Jones. May 28th 1860, judgment was obtained against Josiah Jones and Leonard Schweitzer, for want of an affidavit of defence, but was resisted by William Gwinner, the other defendant, on his allegation that he was a mere surety for Josiah Jones, who was the principal debtor, and that he had given the required legal notice to the holder of the note to collect it from Josiah Jones; that the same was not complied with, and that if it had been, the money might have been collected.

The evidence relied on as a discharge from liability as surety of his co-defendants, was found in the testimony of one P. A. Fritchman, and consisted in admissions, on the part of Mr. Oberly, to the effect that Gwinner had called upon him and told him to bring suit upon the note immediately, or he would be no longer surety. The admissions of Mrs. Oberly, which, (with those of her husband, were in answer to questions propounded by the defendants in the presence of the witness, after the

alleged notice), were to the effect that her husband had informed her of his conversation with Mr. Gwinner, as to what he wanted him to do with the note, but which was not communicated to her as a warning or notice from the surety, nor by her husband as his authorized agent.

The plaintiffs requested the court to charge the jury as follows :—

1. That notice to the husband to collect the note was insufficient, and did not bind the wife, even if communicated to her.

2. That the notice to collect the note was insufficient, and did not discharge the defendant.

3. If the jury believe that the conversation was had as stated in the deposition of P. A. Fritchman, the notice was insufficient to discharge the defendants.

4. If the jury believe that Josiah Jones was insolvent on the 12th April 1860, and for a month or more prior to that day, the plaintiff was not bound to sue, and a notice so to do, under the circumstances, would not discharge the surety.

5. The declaration of Mrs. Oberly that she had received the notice from her husband, was insufficient to bind her, as there is no evidence that her husband had authority to act for her, or to receive notice on her behalf.

6. There is no evidence that Mr. Gwinner constituted John S. Oberly his agent to communicate the notice to him to his wife, and therefore the notice was not sufficient.

The court below, after stating the main facts of the case, instructed the jury as follows :—

" The only defence set up by Gwinner is, that he is surety on the note, and that at the maturity of the note, Jones, the principal, was able to pay the same, and that if suit had been brought immediately, it might have been secured by judgment on the real estate of Jones, and been collected from him ; and he alleges that he gave Mrs. Oberly and her husband John S. Oberly notice that she should immediately push, bring suit, and proceed to collect from Jones, and that if she did not so proceed to collect from Jones, that he, Gwinner, would consider himself discharged from liability on the note, as he was only surety on the same.

" The defendant alleges also that Mrs. Oberly neglected and refused to push or bring suit to collect the note from Jones, and that Jones has since become insolvent.

" If the jury find these facts to be true, as alleged by Gwinner, the surety, they form a full and good defence in equity for him against the note or claim of the plaintiff in this suit."

Here the court read the evidence bearing on these allegations to the jury, and said to them, "we have been requested to charge and instruct on several points put by the counsel for the plaintiff, which raise all the material questions in the case. The

following answers to these points will supersede the necessity of a more extended view of the case in our general charge:—

" 1. We answer this point in the affirmative. Notice to the husband alone is insufficient to bind the wife.

" 2. As the notice was verbal, we must ascertain from the testimony what the notice was in terms. If all the testimony of the witnesses upon the subject of the notice is believed by the jury, the court instruct the jury that in point of law the notice would be sufficient.

" 3. The whole of the testimony of Peter A. Fritchman must be taken together. What he has testified on the stand before you is the testimony in this cause. His deposition, taken on a former occasion, was offered in evidence by the plaintiff, to show a discrepancy or contradiction in his testimony, and then discredit his testimony given here in court, and we decline to give an opinion upon a portion of his testimony as required.

" 4. We answer this in the affirmative. If Jones, the principal debtor, was insolvent at the time the notice was given, and his estate so encumbered by liens, that neither collection nor security could have been obtained by suit or judgment, a failure to bring suit would not discharge the surety.

" 5. That the court decline to charge the jury as requested in this point. If the jury find from the evidence that notice was given to Oberly, the husband, by the surety, as testified, with the request that he would deliver the notice to the wife, and that Oberly, the husband. did communicate the notice to his wife, and that the wife afterwards admitted to the surety that she had received such notice from him through her husband, and the notice in point of law was sufficient, the wife would be bound by it, and particularly if the wife found no fault with the notice, or the manner it had been communicated to her by her husband, when her attention was called to it by the surety in person, as testified before you.

" 6. The court decline to instruct the jury that there is no evidence that Gwinner made John S. Oberly his agent to communicate the notice from him to Mrs. Oberly; as it is testified before them that Mrs. Oberly admitted to Mr. Gwinner, the surety, that her husband did give her the notice on that occasion as soon as he came home, about a month or more before the date of the admission by her, that he, Gwinner, wanted her to collect the note of Jones, and that if she did not do so, he would be responsible no longer. If Mr. Gwinner sent the notice to her by her husband, it was competent for her to admit the terms of the notice, and the fact that she had received the same. The court therefore leave it as a question of fact for the jury, whether she did receive the notice, and whether she admitted the same, as testified by P. A. Fritchman, the witness."

[Shimer *et al. v.* Jones *et al.*]

Under these instructions there was a verdict and judgment for defendant; the plaintiffs thereupon sued out this writ, averring that the court below erred—

1. In admitting the evidence of the credit of Josiah Jones in the spring of 1860.

2. In admitting the testimony of Peter A. Fritchman, without first requiring the defendant to give evidence that John S. Oberly, the husband of Catharine Oberly, was the agent of William Gwinner and Catharine Oberly, with reference to the note, to prove

1st. That William Gwinner, defendant, asked John S. Oberly (husband of Catharine Oberly) if he had collected that note of Josiah Jones, on which Leonard Schweitzer and he, Gwinner, were the sureties, and his reply that he had not.

2d. The admissions and declarations of John S. Oberly that William Gwinner had given him notice, more than a month ago, that he should bring suit and collect it immediately, or he should not be responsible.

3d. The admissions of John S. Oberly that as soon as he went home he had made known to his wife what Gwinner had said, and that she replied to him that Gwinner was not in earnest, and that the note might lie another year.

4th. The admissions of Mrs. Catharine Oberly that she had received such notice from her husband.

3. In their answer to the plaintiffs' 2d, 3d, 4th, 5th, and 6th points.

8. In that portion of the charge commencing with the words "and that at the maturity," and ending with the words "collected from him," the same being inconsistent with and contradictory to their answers to plaintiff's 4th point; and thus directing the attention of the jury as to the ability of Josiah Jones, the principal, to pay the note at its maturity (April 1st 1859), instead of the time when the notice was given, viz., the beginning of March 1860.

9. In that portion of the charge commencing with the words "if the jury find these facts to be true as alleged by Gwinner," and ending with the words "plaintiff in this suit," referring in this clause to the particular allegations in another portion of the charge, commencing with the words "and he alleges," and ending with the words "that he, Gwinner, would consider himself discharged from all liability on the note," because there is no evidence in the cause for the jury to pass on that he, Gwinner, gave Mrs. Oberly and her husband notice that she should immediately push, bring suit, and proceed to collect the note from Jones, and that if she did not so proceed to collect from Jones, that he, Gwinner, would consider himself discharged from liability on the note.

[Shimer *et al. v.* Jones *et al.*]

*O. H. Myers, E. J. Fox,* and *A. S. Knecht,* for plaintiffs in error.

*Reeder* and *Green,* for defendants in error.

The opinion of the court was delivered, April 2d 1864, by
THOMPSON, J.—A surety in an obligation after it has fallen due, has a right to require the holder to quicken his movements in regard to its collection from the principal, by giving and proving clear and distinct notice to him to do so, otherwise he will be no longer responsible as surety. The right to a defence by a surety for a failure on part of the holder of the security to move, after such a notice, is in equity, and most important. Formerly he could only arrive at the same result, after a troublesome and tedious proceeding in chancery, in which he must have set forth distinctly his title to the interposition prayed, as well as the relief sought. In such a proceeding no uncertainty would remain when the court should require the creditor to proceed, as to notice to him, and what he was required to do. All that would appear of record, and it would be made known to the party by an official service of the decree upon him. The equitable principle of such a proceeding was early adopted in Pennsylvania, but as we had no courts of equity, it was applied in appropriate cases in the common law courts as an equitable defence, arising out of a failure to regard a notice *in pais,* by the surety to the holder of the obligation, to proceed against the principal, or in default the surety would be no longer bound. "This notice," says Tilghman, C. J., in Cope *v.* Smith, 8 S. & R. 110, must "be proved clearly, and *beyond all doubt,*" and the "request be positive, and accompanied with a declaration that unless it be complied with the surety will be considered as discharged." The rule was repeated without modification in The Erie Bank *v.* Gibson, 1 Watts 143, and has ever since been followed. Wolleshlare *v.* Searles, 9 Wright 45, is so appropriate to the principal feature in this case that we need scarcely refer to any other authority. "The proof of this warning" to the holder of the obligation, says Lowrie, C. J., "is therefore the preliminary evidence to raise the duty and introduce the evidence of its violation. If this warning is not clearly proved, all further evidence is good for nothing, and ought to be rejected." "The evidence of it that requires a long and tedious analysis to show its application to the note sued on, cannot be regarded in equity as sufficient. It, and the evidence of it, ought to be so clear and distinct that its meaning will strike the mind of the hearer at once, and without argument." In point of fact, and strictly, there was no proof of notice here to either husband or wife; that is to say, if given it was by parol, and no witness was produced to prove

11 WR.—18

274      SUPREME COURT      [*Philadelphia*

Shimer*Shimer et al. v. Jones et al.*]

that he was present, and heard it.  A substitute, however, for the omission is sought in the admissions of both husband and wife, picked out by interrogatories put by the defendant in the presence of a witness, a month or more after the alleged notice to the husband was said to have been given.  I do not say that such mode of proof would be insufficient under all circumstances, but of all species of testimony it is the most to be suspected, and the least to be respected.  An eminent judge of our times has characterized such testimony as " conversationing" a party into a conviction of himself.

We have held that a married woman is entitled to notice on account of her separate interest in a case like the present, just as other persons are entitled, either by the party interested to give such notice, or some one authorized by him to do so: Hellen v. Bryson, 4 Wright 472.  The proof extracted as above attempted, measured by the authorities already cited, together with the last-mentioned case, is, in our opinion, wholly insufficient to establish the requisite notice to Mrs. Oberly, the owner of the note in suit, so as to entitle the defendant to the equitable defence claimed.

In the first place, it was to the effect that the husband of the real plaintiff admitted that the defendant had called on him a month or more before, and asked him if he had collected the note from Josiah Jones, the principal, and on which he was a surety, and that he had told him *he* should bring suit on it immediately, or he would not be responsible.  He admitted, further, that he had told his wife of the conversation, " but that she allowed he was not in earnest, and it might lie another year."

We said, in Hellen v. Bryson, that the notice must be intended for the wife, and, if delivered to the husband for her, it would be a question of service afterwards.  But we hardly reach the last point of this remark, for it was clearly *intended* for the husband, so far as the admissions show.  The wife's name was not mentioned at all, and no message was attempted to be sent to her through the husband.  He was treated as the owner of this note, which he was clearly not, without the precaution of inquiry as to whom the note really belonged, if defendant was ignorant on that score.  It was therefore simply notice to a wrong party. Nor was the husband constituted the agent to give the notice any more than to receive it, which we held was not the case in Hellen v. Bryson.  We think the marital relation does not constitute him her agent in regard to her property, although he is her protector.  There cannot at all times be entire safety in regarding him in this light, and the authorities cited by the plaintiff in error we think fully establish this position.  Nothing drawn from the husband was evidence of notice to his wife, nor were her previous acts evidence of a general agency in regard to the note.

[Shimer *et al. v.* Jones *et al.*]

The admissions of the wife are next to be noticed. In their broad sense they amount to no more than that her husband informed her of the conversation the defendant had had with him, not about what he wanted *her* to do, but what he wanted *him* to do. The adroit manner in which she was questioned, for the purpose of committing her, leaves it just this, and no more: "Did not your husband tell you a month ago," says the interlocutor, "I wanted *you* to collect that note, that if *you* did not do so I would be responsible no longer?" Now, if he meant the pronoun *you* as applicable to her, the proof by the same witness, almost in *uno flatu*, proves the question to have contained an implied false assertion, for not one word was proved to have been said by him about her in his conversation with the husband, as admitted by him—the husband. But suppose that even this had been as alleged, the communication did not come to her as a *warning*, or notice. The bearer of it only communicated it as a conversation. He was not constituted agent, as already said, and there is a vast difference between information so delivered and a casual conversation. Because it was not so delivered, she was not able to say whether he was in earnest or not. The attempt to make a practical application of it by her in saying, "I thought that would clear you right away," is rather a feeble effort to make out notice, especially as she had, according to the same witness, but a moment before said she thought he was "*not in earnest, and it might lie over another year.*" This does not sound like the expression of a belief that he was "clear right away."

As this alleged notice, and the disregard of it, constituted the defendant's equity, it was for the court to say whether it was sufficient or not, if believed. For the reasons given, we think it was clearly insufficient. It was not that clear and distinct proof of notice required by law, nor even such as after a tedious analysis, which is not allowable (Wolleshlare *v.* Searles, *supra*), might be made applicable to the real party in interest. Had the testimony, therefore, been all grouped together in an offer, the court would have done right in rejecting it. But as part was received under exception, and part without objection, we think the learned judge erred in answering the plaintiff's second point in the negative, by saying, "that if *all* the testimony of the witnesses on the subject of the notice is believed by the jury, in point of law the notice would be sufficient" to discharge the defendant. The same error is to be found in the answers to the fifth and sixth points of the plaintiffs. He should have answered that it was insufficient.

There is an assignment of error which we have no doubt is founded on a mere mistake in the use of language in writing out the charge; but as it appears before us as the charge actually

[Shimer *et al. v.* Jones *et al.*]

delivered, we are bound to notice it. It regarded the question of the time to which the jury should ascertain the solvency of Jones. The court referred them to the time of the maturity of the note, which was a year or thereabouts before notice. They were, in another portion of the charge, referred to the correct time, to wit, the time of giving the alleged notice. But as this latter, if it was the latter part of the charge, was not a correction of the former, we cannot say which instruction the jury followed. It was therefore error, but, from the views we hold of the case, it was of little consequence.

Prudence would dictate that such notices as we have been discussing should always be in writing; but as this is not an imperative requirement, they should be distinctly and clearly given, and as clearly and distinctly proved in all cases. The defect here was, that the notice was wanting in all these particulars, in fact was not given at all, and hence the equitable defence fails. We see nothing else requiring special notice, and we refrain from following the elaborate discussions with which we were favoured, into other questions not now necessary to be determined.

Judgment reversed, and *venire de novo* awarded.

AGNEW, J., was absent at Nisi Prius when this case was argued.