IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

NORTHERN DISTRICT—SUNBURY 1871.

## Conrad *versus* Foy, Administrator, &c., of 'Conrad.

1. A surety in an obligation can be discharged by nothing less than clear and positive proof of notice given to the creditor to proceed against the principal by one duly authorized to give it at a time when the creditor has it in his power to proceed to collect his debt.

2. The husband of a legatee of a deceased surety is not a person authorized to give notice to the creditor to collect, unless in case of the absence of the representative of the decedent.

At Philadelphia, January 26th 1871. Before THOMPSON, C. J., READ, AGNEW and WILLIAMS, JJ. SHARSWOOD, J., at Nisi Prius.

Error to the Court of Common Pleas of *Northumberland county*: Of October Term 1870.

William Conrad, on the 4th of November 1867, brought an action of assumpsit against John Foy, administrator d. b. n. c. t. a. of Daniel Conrad, deceased.

The cause of action was the following note:—

"$700.                                   March 21st 1865.

" One year after date, we promise to pay to William Conrad or order seven hundred dollars without defalcation for value received, and should judgment be obtained on this note against us, we do hereby agree that all our estate and effects, without exception or exemption, shall be subject to levy and sale in execution thereof, to an amount sufficient to satisfy said judgment and waiving and relinquishing all benefit of any law exempting such estate and

[Conrad *v.* Foy.]

effects, or any part thereof from such levy and sale with interest from date.

ALBERT CONRAD,
DANIEL CONRAD."

Daniel Conrad died about January 1866, having made a will, which was proved January 13th, and letters testamentary were issued to Charles A. Conrad (who is Albert Conrad to the note), the executor named in it. He was discharged May 14th 1867, and John Foy appointed administrator, &c.

For the defendants, D. D. Foy, the husband of one of the daughters of the decedent, testified that he and Abraham Sterner, the husband of another daughter, both daughters being legatees under the will, went to William Conrad in the spring of 1866.

" Sterner told him that he thought Albert was going back, and he should proceed against him. That they wouldn't stand for this note or money; that he should enter it up; that they were not going to be responsible for the money. We told William Conrad we came there on purpose to give him notice. William Conrad said what I can't remember. The note was not entered up at the time."

G. W. Neidig, who accompanied Foy and Sterner, testified : " William was on porch. Sterner called him out and told him he wanted him to attend to that note he held against C. A. Conrad, that he wanted to make himself safe. He was afraid Al would go back on him; that Bill should secure himself; that they would not stand good, that he should come on to the estate of Daniel D. Conrad. Sterner said C. A. Conrad had got money of Wm. Conrad and he was afraid Al would go back on them, and they did not or would not let it come on estate. Amount was not mentioned. William said he was all right, he had a judgment-note. This was last of February or 1st of March, along in spring of the year."

Charles A. Conrad testified : " My father went bail for $700 to Wm. Conrad, on note on which I got the money. After note fell due, last of May or 1st of June, he came for his interest for the first year. He gave me a receipt for the interest and told me he had note entered, that the boys told him they would not stand security any longer. I told him I didn't like he entered that note. It was no judgment-note, and I told him I would give him security if he wanted it. Told him I would give him a judgment on my property. He said he had a judgment that was good enough. When I came to Sunbury I looked and saw he had note entered. He said Foy and Sterner had been up; this was before he came for his interest. I saw him again in beginning of December of same year. I came to Sunbury; met him at corner of Bassler's store. We talked about this note. I told him I thought it was

[Conrad v. Foy.]

not a judgment-note. He said it was, and that he had a judgment that was good enough. I wanted him secured for his money. I told him in December, in conversation, I was going back. I told him I would secure him. He said he had a judgment that was good enough. I told him at that time it was not a judgment but a promissory note. I said nothing about other creditors pushing me, but I knew they would. I told him I was failing in business. No judgment at that time against my property but note he entered."

Abraham Sterner testified: "I went to William Conrad in 1866; beginning of year. I called him up and told him he should get that note against Charles A. Conrad entered up—that judgment-note he said he held against Charles A. Conrad; I told him the estate wouldn't stand good for it if he didn't get it entered up. I told him I thought it wasn't safe the way it was. C. A. Conrad was in business and that we ought to be safe too; I told Conrad I thought he was not safe the way it was; I told him Albert was in debt in his business there; William said it was a judgment-note; he didn't show me the note. He said he would get the note entered. This was in February or March; note had not been entered up."

The record of the entry of the judgment on the note was as follows:—

"Ap D. No. 118, Jan. T. 1866.

| | |
|---|---|
| William Conrad<br>v.<br>Albert Conrad<br>and<br>Daniel D. Conrad. | Judgment in plaintiff's favor on single bill, with power to enter the same, dated March 21st 1865, for $700, payable one year after date. Defendants agree to waive benefit of exemption. Entered January 22d 1866." |

On the 9th of August 1867, on the application of creditors of C. A. Conrad, this judgment was stricken off.

In rebuttal, William Conrad, plaintiff, testified: "Saturday evening near dark, in January 1866, 24th, Sterner and others came there; they wanted me to enter that note if anything should turn up with Albert Conrad that I would have first judgment; that is all that was said; I had the note entered on the 26th of January; I never told them it was a judgment-note; they all thought it was; six months afterwards I thought it was no judgment-note; I went to them and told them that I thought it was not a judgment-note; they said they would see their lawyer about it. * * * We all thought it was a judgment-note at the time it was given. At the time Sterner and Foy called on me I thought it was a judgment-note, and so did they. They hadn't seen the note then. I and Albert Conrad thought it was a judgment-note. They said I should get the note entered up. I took it to old Mr. Reimensnyder (prothonotary)—he looked over it and entered it.

[Conrad *v.* Foy.]

" Foy and Sterner, when they called on me, didn't say anything about not standing for the note, but that I should do my duty, so that I should have the first judgment; Alfred was good yet, when by their direction I took the note to Evans."

The court charged:— * * *

[" The defendant contends that he is discharged from liability, because that before the maturity of the note upon which suit is brought, the holder, William Conrad, was informed by some of the devisees and legatees of Daniel Conrad, deceased, the surety in the note, that they thought Albert Conrad (the principal in the note) was going back, and he should proceed against him; that they wouldn't stand for this note or money; that he should enter it up; that they were not going to be responsible for the money; that he should make himself safe; that he should secure himself safe; that it should come on the estate of Daniel Conrad; deceased; that if the jury found the above notice had been given and request made, and that William Conrad did not proceed within a reasonable time and with due diligence to collect the note, that the surety was discharged.] * * * That if the surety is dead, if notice is given to the holder of the note or bond by some one having a right to give notice, the holder is equally bound to proceed, as if notice had been given by the surety. The character of the notice must be such as to inform the party to whom it is given what was desired of him. It must not be so ambiguous and uncertain as to leave it in doubt what is desired to be done.

" The plaintiff's counsel contend that the notice is not of this character and that the notice was simply to enter up the note (all the parties at that time, it is probable, supposed it to be a judgment-note), which was immediately done." * * *

The court further told the jury, that [" the persons giving the notice were devisees or legatees of Daniel Conrad, and interested in his estate, and that a notice by them or some of them was sufficient."] * * * " William Conrad held the note, and we think he was bound to know whether it was a judgment or not, and whether at the time it was entered as a judgment against Albert, he had real estate more than sufficient to pay it, if you believe the evidence, the entry of the note was not a lien on Albert's property. The estate of Daniel Conrad, we think, should not suffer from William's ignorance." * * *

The verdict was for the defendant.

The plaintiff having sued out a writ of error, assigned for error the parts of the charge in brackets.

*C. A. Reimensnyder* and *W. C. Lawson*, for plaintiff in error, cited Strickler *v.* Burkholder, 11 Wright 479; Hellen *v.* Crawford, 8 Id. 106.

[Conrad v. Foy.]

*J. K. Davis, Jr.*, and *J. B. Packer*, for defendant in error, cited Geddis *v.* Hawk, 10 S. & R. 37; Cope *v.* Smith, 8 Id. 110; Erie Bank *v.* Gibson, 1 Watts 143.

The opinion of the court was delivered, February 9th 1871, by

AGNEW, J.—When the legislature, by the Act of 25th April 1855, enacted that no special promise for the debt or default of another should be binding, unless a memorandum or note in writing, signed by the party to be charged, be taken, it gave birth to a principle quite as valuable in the present case as in that to which it was applied. Why should a surety bound in a solemn bond or note in writing, to pay a debt which his credit enabled his principal to create, be discharged therefrom except upon the clearest equity; and why should the written obligation be blown away by the uncertain breath of witnesses? A notice from a surety to the creditor to proceed against the principal, or otherwise the surety will be discharged, ought in justice to be in writing and in the most explicit terms. But prior decisions have not required this, and we cannot legislate such a rule into existence. We have a right to hold and justice requires us to say, however, that nothing less than clear and positive proof of the notice given by a person duly authorized to give it, and a notice clear and explicit in its terms, given at a time when the creditor has it in his power to proceed to collect his debt, should discharge the surety from an undoubted legal obligation to pay the debt. The notice in this case cannot be said to be of this character. The witnesses differ as to its terms, and it was either doubtful in its character, or it was, according to the major proof, a notice to enter up judgment on a note supposed by the parties to contain a power to enter judgment, but was discovered several months afterwards not to be so. It was given about two months before maturity, and when it was not in the power of the creditor to proceed to collect it, and the persons who gave it were sons-in-law of the deceased surety, whose wives are said to be legatees under his will. The creditor, however, did enter judgment immediately, the prothonotaries, strange to say, taking the note and filing it, as if it contained a power to enter judgment. Now there may be cases where on account of the absence of a representative of the deceased surety, a party interested in his estate may be allowed to give a notice in protection of the estate; but certainly there was nothing in this case to warrant it, and in advance of the maturity of the note. There was no evidence that the executor of Daniel Conrad, though the principal in the note, had refused to give the notice in behalf of Daniel's estate; or had refused to lend his authority and sanction to the sons-in-law as his agents to give the notice. Now in the absence of any good reason, on what principle of sound equity shall one who has a certain lawful debt, unshadowed by a single

18 P. F. SMITH—25

[Conrad *v.* Foy.]

infirmity, be compelled by the notice of apparent strangers, to hunt the will of the deceased principal debtor, employ counsel and pay the expense of a search to discover their interest in the estate, or otherwise submit to a loss of his debt? Upon all the facts in the case there was no equity established to entitle the estate of the surety to be discharged, and the court should have so told the jury.

Judgment reversed, and *venire facias de novo* awarded.