## Commonwealth ex rel. *v.* National Surety Company et al., Appellants.

Argued October 4, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Francis B. Bracken,* with him *Geo. Ross Hull* and *Morgan, Lewis & Bockius,* for appellant.—Under the law of the State of Pennsylvania as affirmed and recognized by the Act of Assembly of May 14, 1874, P. L. 157, a surety by notice given to the creditor in accordance with the provisions of the act, may require the creditor to proceed against the debtor, and if the creditors decline to act pursuant to the notice, the surety is discharged from liability on its bond: Erie Bank v. Gibson, 1 Watts 143; Fidler v. Hershey, 90 Pa. 363.

The rule of law thus stated is applicable to the case of a surety on a depository bond executed in favor of the Commonwealth: Com. v. Bank, 15 Pa. Dist. 949; Penna. T. & T. Co. v. Meyer, 201 Pa. 299; Prudential Trust Co.'s Assignment, 223 Pa. 409.

A corporate surety cannot be denied the right to invoke the rule of law first above stated simply because it is engaged in the business of acting as surety for compensation: Davison v. Ins. Co., 189 Pa. 132; Montgomery Co. v. Ambler-Davis Co., 302 Pa. 333; Purdy v. Massey, 306 Pa. 288; South Phila. Bank Case, 295 Pa. 433.

The rule of strictissimi juris is in reality a rule of construction and has no relevancy whatever to the questions raised in this proceeding: Miller v. Stewart, 9 Wheat. 680; American Surety Co. v. Pauley, 170 U. S. 133.

The law makes it a part of a contract of suretyship covering liability for obligations of the principal arising in the future and having no fixed period of termination, that the surety may by proper notice terminate and cancel the contract: Slagle v. Forney, 1 Monaghan 30; Pleasanton's App., 75 Pa. 344; Coe v. Vogdes, 71 Pa. 383.

*Harold D. Saylor,* Deputy Attorney General, with him *Lucien B. Carpenter,* Assistant Deputy Attorney General, and *William A. Schnader,* Attorney General, for

appellee.—A surety on a depository bond covering state funds has no right to terminate liability thereon without the consent of the Commonwealth: Com. v. Caldwell, 224 Pa. 103.

In any event, appellant undertook its obligation for a money premium and should not be permitted to avoid the consequences of its obligation by merely giving notice of its intention to terminate the bond: Young v. Bonding Co., 228 Pa. 373; South Phila. State Bank v. Surety Co., 288 Pa. 300; Montgomery Co. v. Ambler-Davis Co., 302 Pa. 333.

A contract of insurance can be cancelled only by mutual consent, unless the right to cancel has been expressly reserved in the contract: Davison v. Ins. Co., 189 Pa. 132; Phila. Linen Co. v. Ins. Co., 8 Pa. Dist. 261.

OPINION BY MR. JUSTICE SIMPSON, December 5, 1932:

In each of these cases, defendant appeals from an order of the court below discharging its rule to show cause why the confessed judgment entered against it should not be opened and it let in to a defense. The basic facts are exactly the same in each of them, and the same principle of law is controlling. They will all be decided, therefore, in this one opinion; for convenience, the dates, names and amounts being taken from the first appeal.

Defendant gave to the Commonwealth, which is plaintiff, a bond conditioned that the First National Bank of Glen Campbell, Pa., would safely keep all moneys of the Commonwealth deposited with it, and would repay them when and as requested by the proper state officials. By virtue of the warrant of attorney, forming part of this bond, the confessed judgment was duly entered. The fact of its entry is not objected to, save for the single reason now about to be stated.

On October 8, 1931, defendant served upon the proper state officials the following notice:

"On or about the 28th day of July, 1923, the National Surety Company, as surety, executed its certain depository bond in the sum of $7,500, on behalf of the First National Bank, of Glen Campbell, Pennsylvania, a duly designated depository for funds and moneys of the Commonwealth of Pennsylvania, as principal, and in favor of the Commonwealth of Pennsylvania, as obligee.

"For the purpose of terminating its liability under the said bond, National Surety Company hereby serves notice upon you that, under the provisions of the Act of May 14, 1874, P. L. 157, of the State of Pennsylvania, it demands and directs that you withdraw and/or collect or sue for, within thirty (30) days from the receipt by you of this notice, all deposits which you have in said bank, together with interest thereon, if any, to secure which the above described bond was executed.

"National Surety Company hereby expressly declares that its liability under the said bond shall wholly cease and terminate upon the withdrawal or collection by you of your said deposits, and that such liability shall likewise wholly cease and terminate from and after the expiration of the said thirty (30) days should you fail to comply with this notice and demand."

The state officials did not comply with that notice, either within the thirty days mentioned therein, or at any other time, and defendant contends that the effect of this failure is to release it from all liability on its bond, even for the deposits which were made before the notice was given. In point of fact, there were no deposits made after that time. Its primary statement on this point is: "Under the law of the State of Pennsylvania, as affirmed and recognized by the Act of Assembly of May 14, 1874, P. L. 157, a surety by notice given to the creditor in accordance with the provisions of the act, may require the creditor to proceed against the debtor, and if the creditor declines to act pursuant to the notice, the surety is discharged from liability on the bond."

It is very clear that this act, of itself alone, cannot operate to relieve from liability. It provides that "the surety or sureties in any instrument in writing for the forbearance or payment of money at any future time, shall not be discharged from their liability upon the same by reason of notice from the surety or sureties to the creditor or creditors to collect the amount thereof from the principal in said instruments, unless such notice shall be in writing and signed by the party giving the same." This is a limiting, and not an enlarging statute, and cannot be otherwise construed than as limiting sub modo the exercise of a right theretofore existing. It is indeed but a belated recognition of the need for such a curative provision, as pointed out by us in Cope v. Smith, 8 S. & R. 110 (1822), Shimer v. Jones, 47 Pa. 268, 276 (1864), and Conrad v. Foy, 68 Pa. 381, 385 (1872), and simply means that whenever theretofore a properly proved, uncomplied with, notice by a surety to the creditor to proceed, would have released the former from liability, whether the notice was verbal or written, thereafter, in order to be efficacious, such notice must be in writing.

Appellant's main contention is, however, "that if a creditor, after being [expressly and definitely] requested to bring suit against the principal debtor, refuses or neglects to do so, the surety is discharged, provided the request be proved clearly and beyond all doubt, and provided it be accompanied with a positive, explicit declaration that unless the request be complied with the surety will be considered as discharged," and for this it relies upon Cope v. Smith, supra, Erie Bank v. Gibson, 1 Watts 143, First Nat. Bank of Hanover v. Delone, 254 Pa. 409, and kindred cases. For the purposes of these appeals, we may assume this general rule to be accurately stated for cases in which the contract of suretyship is silent on the subject; nevertheless this possible release from liability may be waived by the surety in the suretyship agreement. This must be so, since the

114

rule is for the benefit of sureties only, and there is no
public policy to be served by applying it where the surety
has agreed, in the particular contract, that it shall not
apply. That it may be waived, appellant's counsel ex-
pressly admitted at bar. In determining whether it has
in fact been waived in any given case, it must always be
remembered that sureties are as much bound by the true
intent and meaning of the instrument to which they are
parties, as principals are (Roth v. Miller, 15 S. & R.
100) ; a conclusion never questioned by us, but, on the
contrary, affirmed in a long line of cases. See Fink v.
Farmers' Bank of Harrisburg, 178 Pa. 154; State Camp
of Pa. P. S. of A. v. Kelley, 267 Pa. 49, 55; Thommen v.
Aldine Trust Co., 302 Pa. 409, 419; Cohen v. Bank of
Phila., 102 Pa. Superior Ct. 279, 284.

Turning then to the bond in the instant case, we find
that, after reciting that defendant is bound to the Com-
monwealth "for the payment of the amount of moneys
of the said Commonwealth deposited in the First Na-
tional Bank of Glen Campbell......and this contract of
suretyship shall extend to all deposits in the said First
National Bank of Glen Campbell at any time made to
the amount above named," viz., $7,500, it continues as
follows:

"And in case of a breach of any of the conditions of
the foregoing bond, the said surety holds itself *bound
as principal* for any debts arising thereunder, in the
amount aforesaid, *and agrees to answer for the same*
without regard to and independently of any action taken
against the said First National Bank of Glen Campbell
and *whether the said First National Bank be first pur-
sued or not.*" This provision is as much a part of the
contract as any other in it, is sustained by the consid-
eration which supports the contract in its entirety, and
must be enforced according to its terms. It is clear, be-
yond cavil, that as to moneys on deposit at the time the
surety gave notice to the State, this provision operated
as an express waiver of the rule upon which appellant

relies; since, to compel the Commonwealth to proceed forthwith against the bank for all existing deposits, under penalty of losing all claim against appellant on its bond, would require "the said First National Bank [to] be first pursued," in the teeth of the above-quoted provision of the bond, which says that defendant is "bound as principal [for the return of the deposits on demand] ......and agrees to answer for the same......whether the said First National Bank be first pursued or not."

The reason for the provision quoted, if one need be given, is written large in present-day history. If sureties for the banks holding state deposits could force the Commonwealth to proceed at once, few such banks could continue to function in times like these, the whole banking system of the Commonwealth would be demoralized, if not destroyed, and untold injury would be done, not only to the depositors but to the entire body of citizens as well. The only other alternative would be for the State to refuse to proceed against the banks, thereby losing all benefit of the suretyship contracts on the faith of which it made the deposits, and, to a considerable degree, preventing it from aiding the electorate at a time when such aid was most needed, if not also depriving it of the funds necessary to enable it properly to transact purely state business.

If authority is needed for so self-evident a proposition as that upon which we decide these appeals, it will be found in Com. v. Enterprise Nat. Bank, 15 Pa. Dist. R. 949. There, as here, judgment was entered by virtue of a warrant of attorney forming part of a surety bond, given to secure the Commonwealth against loss resulting from funds deposited in a state depository. In the bond the sureties stated (page 950) that "we hold ourselves bound as principals for any duties [debts] arising thereunder, and agree to answer for the same without regard to and independently of any action taken against the said Enterprise National Bank, and whether the said bank be first pursued or not." Though the question there

did not arise out of a failure to heed a notice to proceed, it was nevertheless the same as here, viz., under the language quoted, will the sureties be held, so long as the bank itself is liable? It was decided that they would be, the court,—in an opinion by the present Chief Justice, then president judge of the court in which the action was pending,—saying (page 952) : "The contract of suretyship is as broad as the bank's obligation, and by its terms the sureties are bound 'as principals for any debts arising thereunder.' ...... The bank is undoubtedly liable for all funds remaining on deposit with it, and so also are the sureties liable, because of their contract to be bound as 'principals' in case of any breach of the condition of the bond." Following this reasoning, the rule to open the judgment in that case was very properly discharged.

Our conclusion is, therefore, that the written notices given to the Commonwealth by these sureties were ineffective as to deposits theretofore made, and, as already stated, there are none others involved in these suits. We are far from holding, however, that because there is no limitation of time expressed in the bonds, a liability for new deposits will continue indefinitely, no matter what the sureties may do. The bonds say that appellants "become security......for the amount of moneys of the Commonwealth deposited" in the several banks, but nowhere specify the time during which deposits may continue to be made, for which the sureties will be held liable. The basis of the rule, upon which the sureties attempt to rely, is that it cannot be supposed that either party intended the contract of indemnity should be forever in force. Hence, in the absence of a controlling provision to the contrary, the surety is permitted, at any time, to give a reasonable notice which will result in its termination. Where, as here, there is a controlling provision to the contrary, it must be held to restrict the rule only so far as is necessary in order to give reasonable effect to the limiting provision. This may be done by

holding that the surety is to be "bound as principal for any debts arising thereunder," to the extent that those debts arose before the sureties undertook to enforce their equity; that is, in the case of bank deposits (and we are considering them only), to those made before the surety has acted by giving notice.

In each of the present cases the order appealed from is affirmed.

CONCURRING OPINION BY MR. JUSTICE MAXEY,

I concur in the decisions in these cases, and I base my concurrence on the following propositions:

(1) That the Act of May 14, 1874, P. L. 157, on which appellants rely, does not give "sureties in any instrument in writing for the forbearance or payment of money at any future time" the absolute right to be discharged from their liability by serving written notice on the creditor to collect the amount thereof, but merely provides in effect that in those cases where, by contract or by positive law, the sureties have a right to be relieved by giving notice, that notice must be *in writing and signed* by the party giving such notice. The act still leaves open the question when and under what circumstances a surety's liability may be terminated by such notice.

(2) That the bond furnished by the surety companies to secure payment of deposits and interest to the Commonwealth, pursuant to section 5 of the Act of February 17, 1906, P. L. 45, is in all its essential aspects a contract of insurance, and is subject to the same rules of interpretation and construction as a contract of insurance. In Young v. American Bonding Co., 228 Pa. 373, 77 A. 623, Mr. Justice STEWART of this court quoted (at page 380) with approval the following from 32 Cyc., page 306: "The doctrine that a surety is a favorite of the law, and that a claim against him is strictissimi juris does not apply where the bond or undertaking is executed upon a consideration by a corporation organized to make

such bonds or undertakings for profit. While such corporations may call themselves 'surety companies' their business is in all essential particulars that of insurance. Their contracts are usually in the terms prescribed by themselves, and should be construed most strictly in favor of the obligee."

(3) Since the bond is in its essential aspects a contract of insurance and since it does not provide for its cancellation by the surety company at the latter's own pleasure, it follows that the beneficiary of that contract, to wit, the Commonwealth, must be consulted and its leave obtained before the contract can be cancelled. The Commonwealth has a vested interest in the contract of suretyship from the date of its execution which interest is analogous to an interest a beneficiary has in a life insurance policy from the date of its execution. "The beneficiary designated in an ordinary life insurance policy has a vested interest from the time the contract of insurance takes effect, in the absence of any stipulation in the policy reserving to insured the right to change the beneficiary, assign the policy, or otherwise divert the proceeds, or in the absence of any language in the policy inconsistent with a vested interest:" 37 C. J. 577, section 343.

(4) Every sound consideration of public policy demands that in the absence of an express reservation of right in a contract of suretyship (and there is no such reservation in the contract before us) the surety company cannot be released from its liability without the consent of the Commonwealth.

Surety companies must accept the burdens as well as the benefits of their business. For many years they have been "insuring" state deposits in the banks of the Commonwealth with only negligible risk and with considerable profit to themselves. Now when the funds of the Commonwealth deposited in the banks most need the protection which the surety companies have been paid to supply, these companies propose to withdraw that

protection. If life insurance companies should seek to cancel their policies whenever an epidemic sweeps across the country, that situation would be analogous to what the surety companies are trying to do in the circumstances revealed to us in the instant cases.

The economic and financial disaster that would befall this Commonwealth if all the surety companies which have insured the deposits of state funds in banks possessed the power of cancellation they now claim and should imperatively demand the State's immediate withdrawal of such deposits upon pain of having the surety bonds cancelled, would be comparable to what befell the nation when the federal deposits were removed from the Bank of the United States and its twenty-five branches in 1833. It would be an anomalous situation if the courts which in matters officially before them are vested with the power to express the will of the sovereign would give such expression to that sovereign will as would inevitably bring ruin to the Commonwealth.

There is no inherent freedom in contracting parties to withdraw from a contract; for example, a contract of marriage cannot be dissolved even by the mutual consent of the two immediate parties to it. The Commonwealth's consent must be obtained if the contract is to be terminated. "Two contracting parties have the power to create rights in a third party:" Professor Arthur L. Corbin on "Third Parties as Beneficiaries of Contractors' Surety Bonds," page 668 of "Selected Readings on the Law of Contracts." In the law of nations the right of a state to withdraw from a union of states, unless the right so to withdraw is reserved in the original compact, is denied. The general power of the government to preserve and protect the public welfare is everywhere recognized: 18 Am. & Eng. Enc. L., page 740. The maxim "salus populi suprema lex" has been accorded recognition in the highest courts of this and other states and of the nation: Powell v. Com., 114 Pa. 265, 294, 7 A. 913; P. R. R. Co. v. Braddock Electric Ry. Co., 152 Pa. 116,

120

127, 25 A. 780; Com. v. Alger, 61 Mass. 53; Beer Co. v. Massachusetts, 97 U. S. 25.

The Commonwealth is within its rights in refusing to consent to the termination of the surety companies' liabilities on the bonds in question.