Second Saving Fund and Loan Association,
Assignee, Appellant, *v.* Bailey.

Argued January 15, 1934. Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Julian W. Barnard,* for appellant.

*A. Clarence Emery,* for appellee.

OPINION BY MR. JUSTICE SIMPSON, January 30, 1934:

The West End Theatre Company was the owner of a property in the Borough of Norristown, upon which the Norristown-Penn Trust Company held a mortgage of $35,000. The theatre company borrowed from the trust company a further sum of $5,000, giving as security therefor a judgment note for that amount, upon which was endorsed the following suretyship agreement, signed by Arthur H. Bailey, defendant and appellee herein, and three other persons:

"NORRISTOWN, Pa., Apr. 8, 1926.

"For a good and valuable consideration, we the undersigned, jointly and severally, do hereby guarantee the payment of principal and interest of the within note and do hereby agree to any renewals or extensions thereof without notice to us." It could have been entered of record at once, but was not.

Subsequently learning that the theatre company was attempting to borrow from the Perpetual Building & Loan Association of Philadelphia a further sum of $15,000, to be secured by an additional mortgage on the same property as that upon which the $35,000 was secured, defendant, by his attorney, wrote to the trust company on January 18, 1927, calling attention thereto. It was further stated therein that defendant would be injured if the $5,000 note was postponed in lien to the proposed second mortgage, and added "that any and all defenses which he may have by reason thereof, will be taken advantage of. I therefore respectfully request that said note of $5,000 be entered of record immediately, so as to preclude its becoming subject in lien to said second

mortgage." The trust company paid no attention to this notice, and, on or about January 26, 1927, the $15,000 mortgage was duly executed and recorded. The $5,000 judgment note was not entered of record until nearly 18 months later. By reason of these facts, the note became a third lien on the property, subject to the $35,000 and $15,000 mortgages, instead of being a second lien thereon, subject only to the $35,000 mortgage, as it would have been had the notice from defendant been heeded.

Subsequently the $15,000 mortgage was foreclosed by The Second Saving Fund & Loan Association, which became the owner thereof by assignment from the Perpetual Building & Loan Association of Philadelphia, and the theatre property was sold for a sum sufficient to pay the $15,000 mortgage in full and $2,465.88 on account of the $5,000 judgment. Of course, if the $5,000 judgment note had been entered as a second lien, as above requested by defendant, it would have been paid in full out of the proceeds of the sale. The trust company did not bid at the foreclosure sale because of an agreement with the said Second Saving Fund & Loan Association, that if the trust company would not bid thereat the loan association would purchase the $5,000 note from the trust company, paying to it the balance due on the note with interest. This it later did, and now sues in its name, as assignee of the trust company, to recover that balance from defendant. It is not necessary to consider the legal or ethical effect of this latter course of conduct.

The statement of claim and affidavit of defense having disclosed the facts above set forth,—their correctness being in effect, at least, admitted in appellant's brief,—the court below discharged plaintiff's rule for judgment for want of a sufficient affidavit of defense, and this appeal was then taken by plaintiff. The order of the court below must be affirmed.

Appellant admits that if a proper notice had been given to the trust company, defendant would have been

relieved of liability because of its failure to give heed thereto, but avers that the one given was not definite and positive enough. To this we do not agree. There is no averment that the officers of the trust company did not know that the sureties on the $5,000 note would be worse off if, quoad the theatre company's property, a $15,000 mortgage became a lien ahead of the note, nor that they did not know that defendant for that reason desired judgment entered at once on the note, as he distinctly and clearly requested. Nor are we required to assume the truth of either proposition. On the other hand, it is but common sense to assume the contrary.

In Tenant v. Tenant, 110 Pa. 478, 485, it is said: "The right of a surety to discharge his obligation by notice to the creditor to pursue the debtor, is an incident of the contract of suretyship. It is a part of the law of that contract, and is, therefore, a part of the contract itself. It is a qualification of the obligation of the contract, reducing it from a peremptory and absolute obligation to one of a qualified or conditional character. It is true the surety may not exercise his right and if he does not his obligation remains intact. But on the other hand he may exercise it, and if he does, and the creditor pays no heed to the notice and thereby fails to recover from the principal debtor, the very root of the surety's obligation is reached and destroyed; he is no longer liable; it is as though he had never contracted." In Hickernell's App., 90 Pa. 328, where, as here, the principal held a judgment bond upon which judgment could have been forthwith entered, we said (page 331): "Had the surety in this case desired that the bond should be entered up, a notice to do so would have been sufficient." So in Wetzel v. Sponsler's Executors, 18 Pa. 460, it is said at page 463: "If the debt might have been obtained from the principal by a suit commenced at the time notice was given, but no action is brought until the property of the principal has been disposed of by himself, taken by other creditors, *or encumbered with liens equal to its value,*

the surety is discharged. The creditor......must use all those means of saving the surety, which the existing state of the law puts in his power, and which a prudent man would adopt to save himself."

The present depression has caused many suretyship cases to be brought before us (among the latest being Com. ex rel. v. National Surety Co., 310 Pa. 108), and we are taught thereby the necessity for requiring the utmost good faith and care on the part of the principal to protect, as far as legally may be, the surety from loss. This is the sine qua non of the continuance of the suretyship contract.

Those interested in the matter will find a valuable note on the subject, including all that we have said and much more, in L. R. A. 1918 C, page 10 et seq.

The order of the court below is affirmed.