# Commonwealth *v.* Caldwell (No. 1).

224   103
1224   116

*Public officers—State treasurer—State depositories—Principal and surety—Substitution of bonds—Acts of June 15, 1897, P. L. 157, and February 17, 1906, P. L. 45.*

1. Under the Acts of June 15, 1897, P. L. 157, and February 17, 1906, P. L. 45, the state treasurer has the primary right to take the bonds of the state depositories, but the bonds are not effective until they are approved by the board of revenue commissioners and the banking commissioner. The function of the board and the banking commissioner is limited to the approval of the bonds. They cannot take the initiative either in taking or surrendering a bond. The treasurer cannot accept a bond without the approval of the board, and the board cannot surrender a bond without the approval of the treasurer.

2. A surety on a bond given under the Act of June 15, 1897, P. L. 157, to secure repayment of deposits made by the state treasurer, is not discharged from liability thereon by the adoption of the board of revenue commissioners and the banking commissioner, of a resolution authorizing the surrender of such bond, and the acceptance of other bonds in its place. The state treasurer may ignore such a resolution, retain the bond, and hand it on to his successor.

3. Bonds given by state depositories to secure the state funds in the hands of the depositories are not limited to the term of any particular state treasurer, nor are they intended merely to cover moneys deposited at the time the bond was given, or at most during the term of the treasurer then in office. They are continuing obligations to protect the state against loss, so long as moneys are deposited in the institutions giving them.

Argued Feb. 15, 1909. Appeal, No. 30, Oct. T., 1909, by Joshua Rhodes, from order of C. P. No. 2, Allegheny Co., July Term, 1908, No. 178, discharging rule to open judgment in case of Commonwealth v. John Caldwell, Jr., et al. Before Brown, Mestrezat, Potter, Elkin and Stewart, JJ. Affirmed.

Rule to open judgment entered on a warrant of attorney contained in a bond of suretyship given by a state depository.

From the record it appeared that the form of the bond was as follows:

"Whereas, James S. Beacom, State Treasurer of the Commonwealth of Pennslyvania, has, with the approval of the Board of Revenue Commissioners, selected The Allegheny National

Bank of Pittsburg, Pa., as a depository of State funds, and has deposited with said Bank the sum of Two hundred ninety-eight thousand six hundred and sixty-four 67–100 dollars ($298,664.67–100), lawful money of the United States of America;

"And Whereas, for the security of the Commonwealth of Pennsylvania, the Board of Directors of said The Allegheny National Bank at a regular meeting, held at Pittsburg, Pa., on the 6th day of May, 1898, did authorize the said The Allegheny National Bank to enter into an obligation to the Commonwealth of Pennsylvania for the repayment of said money, with interest thereon, in accordance with the Act of Assembly in such case made and provided, which obligation was authorized to be signed by the President of said Bank and attested by the Cashier thereof, who was also authorized to affix thereto the corporate seal of said Bank.

" Now, Know All Men By These Presents, That in pursuance of the foregoing resolution of the Board of Directors The Allegheny National Bank of Pittsburg, Pa., in the State of Pennsylvania, is held and firmly bound under the Commonwealth of Pennsylvania, in the sum of Two Million dollars ($2,000,000.00), lawful money of the United States of America, to be paid to the said Commonwealth of Pennsylvania, her certain Attorneys or assigns, to which payment, well and truly to be made, the said The Allegheny National Bank doth bind itself firmly by these presents.

" Sealed with the corporate seal of said Bank, and dated the 14th day of May, the year of our Lord, one thousand eight hundred and ninety-eight.

"The condition of this obligation is such that if the above bounden The Allegheny National Bank shall faithfully and honestly keep and account for such funds, moneys, chattels or other property of the Commonwealth of Pennsylvania, which now are or shall hereafter remain on deposit with or be in custody and keeping of the said The Allegheny National Bank and shall pay over, deliver and account for the same, and any and every part thereof, from time to time and at any time when the same shall be demanded, to or upon the order of the said James

S. Beacom, State Treasurer as aforesaid, or of his successor in office, and shall also, from time to time, when the same shall be demanded by the said James S. Beacom, or his successor in office, pay to him or to his order for the use of the Commonwealth the whole or any part of such sum or sums of money, deposited as aforesaid, as the said The Allegheny National Bank may owe to the Commonwealth of Pennsylvania; and shall also pay over to the said James S. Beacom, State Treasurer, or his successor in office, for the use of the Commonwealth, interest on said moneys at the rate of one and one-half per centum per annum on all daily balances, payable semi-annually, then this obligation to be void, otherwise to be and remain in full force and virtue.

"And further, the obligor above named, upon the happening of any default in the payment of principal, or any installment of interest, when the same becomes due and payable according to the terms hereof, hereby authorizes and empowers any attorney of any court of record in Pennsylvania or elsewhere to appear for and confess judgment for the above sum, with or without declaration, with costs of suit, release of errors, without stay of execution, and with five per centum added for collection fees, and the obligor doth also hereby waive the holding of inquisition on any real estate that may be levied on by virtue hereof. The obligor further agrees that execution may issue upon such judgment so confessed for the full amount of money and accrued interest thereon that may be due and owing from it to the said Commonwealth of Pennsylvania, upon filing a suggestion in writing in the court wherein such judgment shall be entered.

"Sealed and delivered in the presence of

"JOHN CALDWELL, JR.,
"President.

"[Seal of The Allegheny National Bank.]
"W. MONTGOMERY,
"Cashier.

"[SEAL.] Corporate seal.
"Attest:
"WILLIAM F. ROBB."

"For value received, we do hereby jointly and severally bind ourselves and become security to the Commonwealth of Pennsylvania for the payment of the foregoing bond, and the faithful performance of the said The Allegheny National Bank of the conditions of the said bond, according to its terms, and in case of a breach of any of the conditions of the foregoing bond, we hold ourselves bound as principals for any debts arising thereunder, and agree to answer for the same without regard to and independently of any action taken against the said The Allegheny National Bank and whether the said bank be first pursued or not.

"And further, we do hereby authorize and empower any attorney of any court of record in Pennsylvania or elsewhere to appear for and confess judgment against us, and each of us for the sum of Two Million ($2,000,000.00) dollars with or without declaration, with costs of suit, release of errors, without stay of execution, and with five per cent. added for collection fees, and we do further hereby waive and release all relief and benefit from any and all appraisement, inquisition, stay or exemption laws of this State or any State now in force or hereafter to be passed. Said collection fee is hereby directed to be added in and constitute a part of said debt and judgment. And we further agree that execution may issue upon such judgment so confessed for the full amount of money and interest that may be due and owing from said bank to the Commonwealth with attorney's commission upon filing a suggestion in writing in the county wherein such judgment shall be entered.

"As witness our hands and seals this 14th day of May in the year of our Lord one thousand eight hundred and ninety-eight.

|                        |           |
|------------------------|-----------|
| "JOHN CALDWELL, JR.,   | [L.S.]    |
| "JOSHUA RHODES,        | [L.S.]    |
| "J. McM. KING,         | [L.S.]    |
| "WALTER CHESS,         | [L.S.]    |
| "THOS. EVANS,          | [L.S.]    |
| "W. MONTGOMERY,        | [L.S.]    |

"Attest:

"WILLIAM F. ROBB."

"FORM OF RESOLUTION REQUIRED FROM BANKS HAVING DE-
POSITS OF STATE FUNDS.

"I hereby certify that the following resolution was passed
the sixth day of May, 1898, at a regular meeting of the Board
of Directors of the Allegheny National Bank of Pittsburg, Pa.

"Resolved, That the President and Cashier be and are hereby
authorized to execute a bond in the name of the Allegheny
National Bank of Pittsburg, Pa., in the sum of two million
($2,000,000.00) dollars, to the Commonwealth of Pennsylvania,
conditioned that this bank shall pay over, deliver and account
for the same according to law, with interest at the rate of one
and one-half per centum per annum, and with warrant of attor-
ney to confess judgment.

                                   "W. MONTGOMERY,

"Secretary of Board of Directors of Allegheny National Bank,
Pittsburg, Pa.

"[SEAL.]   Corporate Seal."

SHAFER, J., filed the following opinion:

The judgment in this case is entered upon warrant of attor-
ney filed by the defendants authorizing the confession of a judg-
ment against them in the penal sum of $2,000,000, conditioned
that the Allegheny National Bank of Pittsburg, as a depository
of state funds, shall always keep and account for all the sums
then upon deposit, or which shall thereafter be on deposit in the
bank, the date of the bond being May 14, 1898. The defendants
have presented petitions setting forth that on May 14, 1898,
the Allegheny National Bank was designated by the then state
treasurer, with the approval of the board of revenue commis-
sioners, as a depository of state funds, and thereupon gave
to the commonwealth the bond in question, known as bond
No. 21. They further show that on July 30, 1902, the same bank
was selected by the then treasurer, Frank G. Harris, with the
approval of the board, as a depository of state funds, and on
that date gave a bond of like tenor with the former in the sum
of $2,000,000, having a number of persons as sureties, some
of them being sureties also on the bond in suit, this bond

being known as No. 249. The petition further shows that on April 24, 1908, the board of revenue commissioners and the banking commissioner, or a majority of them, selected the same bank as a depository of state funds, and on that date approved two bonds, each for the sum of $250,000, both executed by guaranty companies, these bonds being known as Nos. 1,044 and 1,045. It appears from the answer of plaintiff that these bonds were not in fact presented to the board on that date, but that one of them was actually delivered on May 1, 1908, and the other on May 2, 1908. It also appears that on April 28, 1908, the board of revenue commissioners passed a resolution reciting the selection of the Allegheny National Bank as a depository, the execution by it of bonds Nos. 21 and 249, the fact that the bank had furnished bonds Nos. 1,044 and 1,045 which it desired should be received in lieu of bonds Nos. 21 and 249, and that the board had examined the bonds, each dated April 28, 1908, and is satisfied that the same were proper protection to the commonwealth for the money so deposited or to be deposited with the bank, and directing that the new bonds be accepted in lieu and place of the bonds theretofore given by the Allegheny National Bank, and that the state treasurer be instructed to return to the bank bonds Nos. 21 and 249. It also appears that on April 28, 1908, the commonwealth had on deposit at the opening of business for that day, $575,303.59, and at the close of business it had on deposit $534,226.40. It further appears that the state treasurer did not return the bonds which he was thus instructed to return, but kept them and delivered them to his successor in office, who entered upon his duties on May 1, 1902. It further appears that the bank suspended operations within a few days after the first of May, and that there is yet on deposit the sum of $523,477.18.

The defendants have cited a number of cases relating to the bonds of treasurers and other officers who are appointed from time to time and give bond at the expiration of each commission, as to the relative liabilities of the sureties, and as to their liabilities for the acts of the officer done while holding office under some other commission than that upon which they gave the bond. We are quite unable to see how any of these cases

are applicable to the matter in hand.  The bond in suit is not the bond of any particular state treasurer, but the bond of a depository of money, and conditioned upon the depository accounting for and paying over the money when demanded by the state treasurer or his successor in office, and this applies to moneys which are then on deposit or which shall thereafter remain on deposit or in custody or keeping of the depository. This has plainly no connection with the term of office of any particular state treasurer.

The main contention of the defendants, however, is that the above stated action of the board of revenue commissioners released them from liability on the bond in question, and further that even if this were not within the power of the board of revenue commissioners, the state had ratified their act by retaining the new bonds and threatening to proceed upon them.  The substantial question in the case is whether or not the board of revenue commissioners had the power to take the action relied on.  The board of revenue commissioners appears to have been created by the Act of April 29, 1844, P. L. 486, which provides for the appointment of one person in each judicial district. This act was repealed, so far as the method of appointment was concerned, by the Act of April 30, 1864, P. L. 218, which vested the power theretofore granted to the board in a board to consist of the auditor general, the state treasurer and secretary of the commonwealth.  An Act of May 24, 1878, P. L. 126, provided that these officers should constitute a board of revenue commissioners, to meet at Harrisburg at such times as they should agree upon at least once in three years.  By an Act of June 15, 1897, P. L. 157, entitled: "An Act regulating the deposit of moneys belonging to the state in the banking institutions thereof, and providing for the collection of interest thereon," it was provided that the state treasurer should collect interest from each bank having a deposit of state funds, and that before making such deposit he should require each bank to give a good and sufficient bond with warrant of attorney in double the amount of the contemplated deposit, with surety to be approved by the board of revenue commissioners of the commonwealth of Pennsylvania, and that no deposit should at any time be greater

than one-half of the amount of the bond furnished. The act further provides that the state treasurer shall not be personally responsible for any money lost by reason of the failure of any bank selected as provided by the act, and the board of revenue commissioners was directed to prepare bonds to carry out the provisions of the act. The bond in suit was given under the provisions of this act. By the Act of February 17, 1906, P. L. 45, in regard to the deposit of state funds, the selection of deposi- tories is placed in the revenue commission and the banking com- missioner jointly, and the banks so selected are required to fur- nish a bond with warrant of attorney with sureties "to be approved by the revenue commission and banking commis- sioner, or the majority of them, in double the amount of the deposit to be made," etc.

The power of the revenue commission in the matter is to be derived from these acts. We are at a loss to see how anything contained in these acts as above stated can be supposed to au- thorize the board of revenue commissioners and banking com- missioners to surrender any bond held by the commonwealth, or to substitute one bond for another, or to discharge the sure- ties from liability, and especially could they not do this by accepting a bond or bonds for less than one-half of the amount required by law. The state treasurer was clearly within his rights in declining or omitting to surrender the bond in ques- tion, as his only protection from the failure of the bank de- pended upon his having bonds more than twice as large as deposits.

We see no force in the suggestion that the action of the state treasurer in retaining the new bonds, or that of the attorney general in threatening to proceed or proceeding on them in any way amounts to a ratification by the state of the action of the board of revenue commissioners. If the state treasurer and attorney general have no authority to surrender bonds or re- lease sureties thereon, as they certainly have not, no action of theirs can amount to a ratification.

As there are no facts whatever in dispute, nothing which can be tried by a jury if the judgment were opened, and the defense proposed to be set up by the defendants is purely a

matter of law and fully set out in the pleadings, we are of the opinion that the judgment ought not to be opened.

The rule is, therefore, discharged.

*Error assigned* was the order of the court.

*Geo. C. Wilson*, of *Wilson & Evans*, for appellants.—In an action against a surety, the obligation of a bond cannot be extended beyond the plain import of the words used: City of Lancaster v. Frescoln and American Surety Co., 192 Pa. 452; United States v. Boyd, 40 U. S. 187. Where a bond is given by an officer of an association conditioned for the faithful performance of his duties, the condition is to be confined to the period of appointment or election for which the bond was given: The Manufacturers' and Mechanics' Savings & Loan Co. v. The Odd Fellows' Hall Association of Spring Garden, 48 Pa. 446; United States v. Irving et al., 42 U. S. 250; United States v. Linn et al., 42 U. S. 104; Farrar v. United States, 30 U. S. 373; Com. v. Baynton, 4 Dallas, 282.

*J. E. B. Cunningham*, assistant deputy attorney general, and *M. Hampton Todd*, attorney general, with them *A. J. Edwards*, for appellee.

PER CURIAM, March 15, 1909:

The state treasurer is by law made the custodian of all state funds. It is his duty to receive, disburse and account for the same. Prior to the Act of June 15, 1897, P. L. 157, he had arbitrary power in the selection of depositories and as to the nature and sufficiency of all bonds required by him as a protection against losses. He and his bondsmen were responsible to the state for all moneys which came into his hands as treasurer and he, as a matter of protection to himself and bondsmen, could take whatever indemnity was deemed ample for this purpose. He could require new bonds, surrender old ones, or accept additional ones just as he chose to do. The commonwealth looked to him and his bondsmen and did not concern itself about the nature and character of the bonds of

indemnity taken by him from institutions having state deposits. In 1897, the legislature passed an act intended to place some limitations upon the arbitrary powers of the treasurer, theretofore existing, and to require other state officers to exercise some supervision over his actions in the selection of depositories and in the taking of bonds. This act did not take away from the treasurer the power to select the depositories and to require proper bonds, but it did provide that the board of revenue commissioners should approve the selection of depositories made by the state treasurer and the bonds taken by him. The duty of the board was that of approval only. It could not select the depository or require the bond in the first instance. This was the right of the state treasurer, but the treasurer could not act without the approval of the board. Thus the law stood until 1906 when another Act (February 17, 1906, P. L. 45) was passed dealing with the subject of state deposits. The purpose of this act was to throw around the state treasury additional safeguards as a protection to the public funds. It imposed upon the revenue commissioners and commissioner of banking as a board, the duty of selecting the state depositories and relieved the state treasurer from this burden. This act, supplementary in character, is in pari materia with all the other acts relating to the custody and deposit of state funds. It does not repeal any other law except when inconsistent with the same. In section five, it is provided that the board as above constituted shall approve the bonds taken as security for deposits. It will be observed that while in the first section, this board is given the absolute right to select the depositories, in the fifth section, it is only clothed with the power to approve the bonds. In other words, the state treasurer still took the bond, but it could not be accepted as a security until approved by the board. As to the approval of the bonds, the act of 1906 left the law just as it stood before, except the commissioner of banking was added as a member of the approving board. In the taking and approval of bonds, the act required that they should be in double the amount of the deposit to be made, and this is a limitation on the power of the state treasurer who acts in the first instance and on the board

that approves in the second. Nothing in this act gave to the board the right to take the bond in the first instance or to afterward surrender it. This primary duty rested on the state treasurer after, as well as before, the act of 1906 was passed. As to bonds, the duties of the board were limited to approval. This board does not have the power to take the initiative either in taking or surrendering a bond, which right still remained in the treasurer under the law. The treasurer could not accept a bond without the approval of the board and the board could not surrender a bond without the consent of the treasurer. These are wholesome checks imposed by law upon the officers clothed with the power to deal with this subject. This understanding of the law simplifies the question raised by this appeal. The resolution of 1908 relied on to defeat a recovery, was adopted by the board constituted as above indicated, but as we have seen this board had no power to surrender an old bond or take a new one. As to bonds, it only had the power of approval. The state treasurer did not surrender the bond in suit and the board had no power to do so.

Again, we cannot agree that there can be no recovery because the bond in question was taken in the name of a particular state treasurer and was only intended to cover defaults occurring during the term of office of the official in whose name it was taken. The bond in terms negatives this theory. It was taken to secure deposits during the term of the treasurer named or his successor in office, which means any successor in office so long as state funds are deposited in the institution bound by the bond. Nor is there any merit in the contention that the bond was only intended to cover moneys deposited at the time it was given or, at most, during the term of the treasurer then in office. Such a construction would do violence to the plain intention of the parties as gathered from the bond itself, the purpose for which taken, and the course of business dealings between the state and the institutions carrying its balances on deposit. These bonds are continuing obligations to protect the state against loss, so long as moneys are deposited in the institutions giving them. Such bonds may be surrendered and new or additional ones may be taken in lieu thereof,

but when this is done all of the constituted authorities having to deal with the subject, must join in the act in the manner provided by law. In the present case, the old bond was not surrendered by the state treasurer and it could not be done without his consent, nor could it be done by him alone without the approval of the board. These requirements of the law were not complied with and the obligation of the bondsmen to answer for the default of the bank still remains.

Judgment affirmed.