## CITY OF CHEYENNE v. MARYLAND CASUALTY CO.

(District Court, D. Wyoming.     May 22, 1926.)

No. 1552.

1. **Depositaries** ⊚⟶6, 13—**Designation of city depositary under statute held not for definite term, and bond of such depositary is deemed continuing obligation (Comp. St. Wyo. 1920, §§ 2949–2976).**

Comp. St. Wyo. 1920, §§ 2949–2976, providing that the governing board of a city shall meet on the first Monday in April of each year, or at any time at the call of the chairman, to designate banks as city depositaries, does not limit the term of a designated depositary to one year, or from April to April, but the designation is effective so long as the city continues to make deposits, or until terminated by the parties, and the bond given by a bank as such depositary is deemed a continuing obligation, unless the sureties take steps to terminate their liability.

2. **Depositaries** ⊚⟶13—**Liability of surety on bond of city depositary is not limited to term of depositary's appointment.**

The surety on the bond of a bank as city depositary is liable for all deposits made while the bond is in force, though after expiration of the term for which the depositary was appointed.

3. **Principal and surety** ⊚⟶59—**Rule of strict construction of surety contracts is not applicable to bond given by surety corporation.**

The rule of strict construction in favor of a surety is not applicable to a bond given

13 F.(2d)—26

to secure deposits of public money by a corporation which makes a business of suretyship for revenue, such bond being in the nature of an insurance contract, usually construed most strongly in favor of insured.

4. **Depositaries** ⊚⟶7—**Bond of city depositary, executed by foreign surety company, held not invalidated because member of firm countersigning it as local agent was also member of city commission (Comp. St. Wyo. 1920, § 319).**

That a member of a city commission was also member of a firm which, as local agent countersigned the bond given by a foreign surety company to secure deposits by the city in a bank designated by the commission as city depositary, such countersigning by the local agent being required by statute, held not to invalidate the bond, under Comp. St. Wyo. 1920, § 319, prohibiting any officer to be interested in any public contract.

5. **Depositaries** ⊚⟶13—**Liability of surety on bond of city depositary held not limited to particular fund.**

That the bond of a bank as city depositary was required to be increased because of a contemplated extraordinary deposit from sale of city bonds held not to limit liability of the surety to such particular fund.

6. **Depositaries** ⊚⟶13—**Statute limiting amount of deposit by city treasurer held not to limit liability of surety on bond of depositary bank (Comp. St. Wyo. 1920, § 2967).**

Comp. St. Wyo. 1920, § 2967, providing that a city treasurer shall not have on deposit in a depositary bank at any one time more than 90 per cent. of the amount of the penalty in its bond, held a police regulation, imposing a public duty on the treasurer, which does not limit the liability of the surety on the bond.

At Law.     Action by the City of Cheyenne against the Maryland Casualty Company. Judgment for plaintiff.

Sam M. Thompson, of Cheyenne, Wyo., for plaintiff.

H. S. Silverstein, of Denver, Colo., and Kinkead, Ellery & Henderson, of Cheyenne, Wyo., for defendant.

KENNEDY, District Judge.     This is an action at law, brought upon a depositary bond by plaintiff, to recover of the defendant, as surety for the First National Bank of Cheyenne, Wyoming, a deposit of moneys in that bank lost to the plaintiff on account of the bank closing its doors.     The case was originally brought in the state court and removed to this court, where it was tried to the court and jury.     At the close of all the evidence both parties interposed a motion for a directed verdict, which left all questions of fact as well as law for a decision of the court.     Inasmuch as several difficult legal questions were involved upon which the court desired

further light, and counsel desired an opportunity to file briefs, it was stipulated in open court that the jury might be dismissed, the cause argued and submitted, and the court's decision rendered as to which motion for a directed verdict should be granted, counsel specifically waiving the informality of not having a jury present at the time the court should reach its conclusion, and that judgment should be awarded by the court as upon a directed verdict, the same as though said jury were personally present.

The issues in this case are fairly raised by the pleadings, so that a brief discussion of the facts will sufficiently disclose the points of contention.

The depositary in this case is the First National Bank of Cheyenne, Wyo. Some time prior to the 1st of April, 1921, that bank made application to the city council of Cheyenne for designation as a depositary of public funds for the year from April 1, 1921, to April 1, 1922, which was followed by a designation of such bank as a depositary. There was also an application for designation and a like designation before the 1st of April, 1922. The evidence does not show clearly, by the records of the city, at least, that there was any official designation of this bank before the 1st of April, 1923, or the 1st of April, 1924. On June 28, 1921, a bond was executed by the bank with the defendant as surety, in the general form provided by the state statute, in which, among other things, it was provided that, in consideration of the deposit of certain moneys of the city for safe-keeping in said bank, which would be subject to withdrawal by the city treasurer, and which may be increased or decreased as said treasurer may determine, and in consideration of the privilege of keeping said moneys and the payment of interest thereon, on daily average balances, that the bank will pay over said moneys on demand, and in all respects save and keep the city of Cheyenne, or the city treasurer, or his successor in office, safe and harmless for and by reason of the making of said deposits. It is further provided that the surety, the defendant herein, shall have the right to terminate the obligation upon giving 30 days' notice to the city treasurer.

The bond was duly delivered after having been countersigned by McInerney & Conway, the Wyoming resident agent. McInerney & Conway was at the time a copartnership, one of whose members was John J. McInerney, a city commissioner serving upon the governing or depositary board of said city, receiving applications for and designating city depositaries. On or about the 19th day of August, 1922, a so-called rider to said bond, executed by the bank and the surety company and approved by the city, was filed, the effect of which was to reduce the penalty of the bond of July 28, 1922, from $150,000 to $75,-000. Likewise, on September 28, 1923, an additional rider was executed and filed, further reducing the penalty from $75,000 to $45,000. Soon after the filing of the original bonds, deposits of city funds were made in the First National Bank by the treasurer, which continued until a short time before the bank closed its doors on July 9, 1924. At that time there was in the bank an amount in excess of the penalty of the bond in controversy, for which on August 1st of that year a demand was made by the city treasurer and payment refused. The defendant surety company likewise declined to respond. There was also testimony to the effect that, when the bond was taken out originally, it was because of the fact that the city was about to receive a comparatively large sum of money accruing from the sale of its sewer bonds.

[1] The statutes of the state of Wyoming covering the deposit of public moneys are found in chapter 183 (sections 2949 to 2976) of the Wyoming Compiled Statutes of 1920, the quotation of which in full would unduly prolong this memorandum. In brief, however, so far as the points raised here are concerned, they provide that the governing board or the board of deposits of the city shall consist of the mayor and council; that it shall be the duty of the board to meet on the first Monday in April of each year, or at any time at the call of the chairman, to designate the banks of the state deemed eligible for deposits; the banks seeking to be designated as depositaries shall, on or before the first Monday in April of each year, file their applications in writing, accompanied by sworn statements as to their financial condition; that the board shall pass upon said applications and indorse their approval or rejection thereon; that any bank whose application is so indorsed shall be deemed eligible as a depositary; that the treasurer of the city shall keep on deposit in a designated bank the amounts collected by him as such treasurer, not exceeding 90 per cent. of the penalty of a surety company bond, which shall be subject to payment when demand is made by check, order or other demand; that the banks receiving such deposits shall pay a specified rate of interest; and that, when funds remain on hand which cannot be placed

in designated banks, the treasurer shall notify the governing board which shall make designation of other banks if possible.

It is first contended by the defendant that there can be no recovery in this case, for the reason that the depositary law of the state limits the term of a designated depositary for public funds to the period of one year, or from April to April, and that in any event, if the statute does not limit the term to one year, it is so limited by a designation of the board. This contention is advanced upon the theory and for the reason that the proof tends to show that none of the money of the city remaining in the bank at the date it closed was deposited during the year from April 1, 1921, to April, 1922, or from April, 1922, to April, 1923, when there was a designation of the bank by the board.

As to the first proposition, an examination of the statute reveals nothing which would seem to permit of a construction which would say, in effect, that the designation of a depositary should be for the period of one year. The statute provides that applications may be made before the 1st of April of each year, and that the board shall act upon such applications, but providing also in section 2950 that the board may meet at any other time and designate banks as depositaries. The statute, however, nowhere says that the designation shall be for the period of one year or for any definite period.

[2] As to the second proposition, that the bank was designated as a depositary for a limited term, it may be presumed for the sake of the argument that the designation was for such limited period during the years from April to April, beginning in 1921 and 1922. It appears to me that this point is disposed of in favor of the plaintiff in this case by the case of Fidelity & Deposit Co. v. City of Cleburne, decided by the Court of Appeals of the Fifth Circuit and reported in 296 F. at page 643. That case was decided upon two contentions, made in behalf of the surety company. The first contention, only applicable here, is stated in the language of the opinion as follows, at pages 645, 646: "That the appellant was not liable under the bond sued on for deposits of moneys of the city in the Cleburne Bank made between August 20, 1921, the date of the expiration of the term for which the Cleburne Bank was appointed city depository in pursuance of the contract made by the city's acceptance of the above set out bid of the Cleburne Bank made in August, 1919, and October 17, 1921, the date of the failure of the Cleburne Bank."

The court, in disposing of the contention, on page 647, uses the following language: "The bond sued on is specific in providing that the term of it 'begins on the 20th day of November, A. D. 1920, and ends on the 20th day of November, A. D. 1921.' There is nothing in its recital of the appointment of the principal as city depository or in any other provision of it to indicate that the liability of its makers for city funds deposited with the principal was intended to be limited to deposits made during the term for which the principal had been designated as city depository. On the contrary, by the unequivocal language of the condition of the bond the obligation incurred is to be null and void only 'if the principal shall,' not during the term of its recited designation as city depository, but 'during the term of this bond, faithfully account for and pay on legal demand, all moneys deposited with it by or on behalf of said obligee, and shall not suspend payment during the term hereof.' The language used fairly shows that the parties contemplated the continuance of the principal as city depository during the term of the bond and the deposit with the principal of city funds during the entire year ending November 20, 1921, and that it was intended that the surety should be liable to the extent of the amount of the bond for a failure of the principal faithfully to account for and pay on legal demand all such funds so deposited with it during that year. The court properly ruled against the above-mentioned contention of the appellant that it was not liable for city funds deposited after August 20, 1921."

The only difference in the two cases is that, in the cited case the bond by its terms was for a limited period, which expired after the designated term, and the court there held that moneys deposited after the expiration of the designated term, but during the life of the bond, were covered by the bond, and might be recovered of the surety; while in the case at bar the bond was a continuing one, and not limited as to its term, and deposits were made after the expiration of the designated term, but while the bond by its provisions was still in force. I can see no difference in the cases as to the principle involved. The court in the cited case places stress upon the conditions and terms of the bond itself, and holds the surety strictly to the terms of its contract represented by the bond, rather than to the period covered by the designation. So here, in principle, the surety should be held to its contract in accounting for the funds so deposited in the

designated depository, regardless of the designated period, and, the bond being as before stated a continuing one, it was in existence and in full force and effect at the time the bank closed.

This court, I take it, should, where a state statute is involved, look first for a construction of that statute by the highest court of the state in which it is a law. Counsel has cited no cases, and the court has found none, where the Supreme Court of Wyoming has construed this particular statute. While the construction of similar statutes by other states are persuasive, yet in the federal courts they are not ordinarily as persuasive as the decisions of the United States Circuit Courts of Appeals. In addition, in the cited case it appears that application was made for a writ of certiorari to the Supreme Court, and denied, which must be considered virtually an affirmance of the asserted principle by that high court. Fidelity & Deposit Co. v. City of Cleburne, 266 U. S. 622, 45 S. Ct. 122, 69 L. Ed. 473.

Furthermore, I am satisfied that the leading state authorities do not uphold the contention of defendant. In the case of National Surety Co. v. Campbell, 108 Wash. 596, 185 P. 602, the holding of the court is succinctly stated in the syllabus as follows: "As the designation of a bank as county depositary under Rem. Code 1915, § 5072, is not limited to one year, the period ending in January, defendant, who signed an indemnity bond to protect a surety on the bond of a bank so designated, held liable for a loss occurring after the expiration of part of the year for which it was contended the bank was designated, particularly where the bond of the bank was not limited to a fixed period."

The above case holds, in addition, that the word "shall," as used in a statute similar to ours in regard to the designation of depositaries annually, does not, fairly interpreted in connection with the other provisions, similar to ours, limit the term of the bond to the period of designation, but that it was the intention of the Legislature that any designation made should continue indefinitely until the parties interested should take steps to terminate the relationship.

In the case of Yeargain v. Board of Commissioners, 90 Okl. 38, 215 P. 619, what seems to be a fair statement of the holding of the court is stated in the syllabus as follows: "A designation of a bank as a county depositary is effectual so long as the county shall continue to deposit its funds in the bank, and the bond given in pursuance of such designation is deemed to be a continuing obligation, upon which the sureties will continue to be liable for default, unless they have taken the necessary steps to terminate their liability on such bond."

In the case at bar the bond contains a provision that the surety at any time, upon 30 days' notice, may be relieved of its obligation, which privilege it did not attempt to exercise. In the case of Snattinger v. City of Topeka, 80 Kan. 341, 102 P. 508, again the principle is stated in the syllabus in the following language: "A designation of a bank as a depositary is effectual so long as the city shall continue to deposit its funds in the bank, and the bond given in pursuance of such designation is deemed to be a continuing obligation, upon which the sureties will continue to be liable for defaults, unless they have taken the necessary steps to terminate their liability on such bond."

Other cases somewhat in point are as follows: Western Casualty Co. v. Board of Commissioners, 60 Okl. 140, 159 P. 655, L. R. A. 1917B, 977; Kelly v. Moab State Bank, 64 Utah, 290, 230 P. 566; American Surety Co. v. Tarbutton (Tex. Civ. App.) 248 S. W. 435; United States Fidelity & Guaranty Co. v. Rathbun, 160 Minn. 176, 199 N. W. 561; Manitowoc County v. Truman, 91 Wis. 1, 64 N. W. 307; Commonwealth v. Caldwell, 224 Pa. 103, 73 A. 219.

[3] Neither should the rule of strict construction in a contract of suretyship of this character be applied. In the case of National Surety Co. v. McCormick (C. C. A.) 268 F. 185, a decision from the Seventh Circuit, the following language, with citation of authorities, appears on page 188: "It is urged that the rule of strict construction generally applicable to the obligation of sureties should be here applied. But this is not that ordinary contract of voluntary suretyship, as to which there has arisen a sort of tenderness toward sureties. This is a contract of insurance, entered into by the surety for the revenue which it derives from the business of suretyship, and in this relation the obligation should be treated as other insurance contracts, which are usually construed most strongly against the insurer. Liverpool, etc., Ins. Co. v. Kearney, 180 U. S. 132, 21 S. Ct. 326, 45 L. Ed. 460; American Surety Co. v. Pauly, 170 U. S. 133, 18 S. Ct. 552, 42 L. Ed. 977; Commercial, etc., Ass'n v. Fulton (2 C. C. A.) 79 F. 423, 24 C. C. A. 654."

[4] It is next contended by defendant that the bond is void and unenforceable under section 319 of the Statutes of Wyoming, because

of the countersignature of McInerney & Conway to the bond; McInerney at the time being one of the city commissioners of the city of Cheyenne. This section reads as follows:

"It shall not be lawful for any person, now or hereafter holding any office, either by election or appointment, under the constitution or laws of this state, to become in any manner interested, either directly or indirectly, in his own name or in the name of any other person or corporation, in any contract, or the performance of any work in the making or letting of which such officer may be called upon to act or vote. And it shall not be lawful for any such officer to represent, either as agent or otherwise, any person, company or corporation, in respect of any application or bid for any contract or work in regard to which such officer may be called upon to vote, nor shall any such officer take or receive, or offer to take or receive, either directly or indirectly, any money or other thing of value, as a gift or bribe, or means of influencing his vote or action in his official character; and any and all contracts made and procured in violation hereof, shall be null and void."

Numerous authorities are cited of cases under similar statutes, where contracts in which a public official was interested were held null and void. None of these, however, seems to this court to be analogous to the case at bar, or to suggest a safe rule to be followed in a case of this kind. McInerney was a member of the firm of McInerney & Conway, which countersigned the bond as resident agent. In no other way does it appear that they participated in the execution of the bond itself. Presumably, at least, and as the proof shows, they countersigned the bond on account of some statute requiring bonds of this character only to be received within the state upon the countersignature of an agent within the state. It is not shown that McInerney was an officer or stockholder, or in any way interested, in the defendant surety company, except that in complying with some rule or statute, as a member of a firm designated as a resident agent, his firm countersigned the bond. To hold that such an act under the circumstances comes within the scope of section 319, and shows such an interest on the part of the public official in a contract of suretyship in this case as to nullify that contract, is further than this court cares to go, and the contrary view will be adopted.

[5] It is again contended that the bond was given to secure the deposit of certain funds, and as to which there is no showing of default on the part of the depositary. The evidence of John McInerney, who was the commissioner of finance of the city of Cheyenne at the time the bond was taken out, tends to show that this particular bond was taken at the time for the reason that it was anticipated that a large sum of money would come into the city treasury on account of the sale of sewer bonds. The testimony of this witness, however, is not to the effect that this bond was taken to cover the specific moneys alone accruing from the\ sale of sewer bonds, but, when properly analyzed, is to the effect that the city needed larger depositary bonds at the particular time because of unusual sums of money accruing to the city. This falls short of establishing as a fact that the bond was for the sole purpose of covering moneys realized from the sale of sewer bonds. In any event, the bond on its face fails to disclose that it was for the purpose of indemnifying or securing any specific moneys to the city, but, on the other hand, recites that it covers the deposit of certain moneys of the city of Cheyenne, and that the city and the city treasurer will be kept safe and harmless by reason of making the deposit or deposits. It has been held that such a bond covers all kinds of funds, as in the case of Maryland Casualty Co. v. City of Pensacola, 68 Fla. 476, 67 So. 118, where it was held to cover license money collected by the bank as an agent for the city, and in the case of McCormick v. Hopkins, 287 Ill. 66, 122 N. E. 151, where it was held to cover time certificates of deposit which were not payable on demand nor subject to check. Neither can the use of the term "certain moneys" aid the defendant in escaping a liability, as this term has been held to be a general one, covering all moneys coming from the same source. People v. Backus, 117 N. Y. 196, 22 N. E. 759.

[6] Lastly, it is contended that, under section 2967, the defendant should not be held for a liability of more than 90 per cent. of the money on deposit at the time the bank closed, because it is there provided that the treasurer should not have on deposit at any bank at any one time more than 90 per cent. of the penalty of the bond. In this case the evidence shows that there was on deposit an amount in excess of that penalty. The theory of the defendant is that the statute itself must be read into the bond, and, the amount of deposit being limited, the statute becomes a part of the contract and fixes the liability of the surety. It would seem that the courts are not in complete harmony upon this

point, but in the recent case of Gregg v. Hinkle, 29 N. M. 576, 224 P. 1025, the identical point was passed upon by the Supreme Court of New Mexico, where it was held that such a regulation does not create a limitation of the surety, but is a police regulation, directed to the officer as an additional element of safety, in order that not only the principal, but any accretions may be fully insured. That court says: "The duty imposed on the depositing board of officers is a duty to the public rather than to the depository or its sureties." Therefore, in the absence of any of the provisions of the bond in suit here, which specifically recites the limited liability, it appears to me that the reasoning in the New Mexico case should be adopted.

It follows that the contentions of the defendant cannot be sustained. Acting upon the motions for directed verdicts and waiver of the formalities in connection therewith, the motion of plaintiff will be sustained, and a judgment will accordingly be entered in favor of the plaintiff and against the defendant for the penal amount of the bond, $45,000, with interest at 7 per cent. per annum from the 1st day of August, 1924, the date when demand was made upon the bank or its receiver for the funds of the city and payment refused, together with costs to be taxed. Proper exceptions will be reserved for defendant.