## MASSACHUSETTS BONDING & INS. CO. v. HARRISBURG TRUST CO.
### Civil Action No. 4159.

District Court, M. D. Pennsylvania.
March 3, 1944.

402

See also 2 F.R.D. 197, 27 F.Supp. 987.

Braddock & Sohn, of Harrisburg, Pa., for plaintiff.

Hull, Leiby and Metzger, of Harrisburg, Pa., for defendant.

JOHNSON, District Judge.

This is a civil action tried by the Court without a jury wherein the plaintiff seeks to recover from the defendant the sum of five thousand dollars ($5,000) representing five years' annual premium on a depository bond.

From the evidence presented the following facts appear: Plaintiff, a Massachusetts corporation authorized to transact business in Pennsylvania, executed, on December 7, 1922, a depository bond in the amount of $100,000 in favor of the Commonwealth of Pennsylvania to secure the deposits made by the Commonwealth in the defendant trust company. The agreed annual premium was in the amount of $500, which was increased to $1,000 on December 6, 1931, and the increased premium was thereafter paid to plaintiff yearly, the last payment being for the period ending December 6, 1933.

On November 21, 1932, plaintiff sent to the State Treasurer the following notice: "Massachusetts Bonding and Insurance Company, Home Office, Boston, Massachusetts. Cancellation Notice to Harrisburg Trust Company, Harrisburg, Pennsylvania.

"Whereas, Bond No. D-17492 of Massachusetts Bonding and Insurance Company, Boston, Massachusetts, given on behalf of Harrisburg Trust Company, Harrisburg, Pennsylvania, a banking corporation created by and existing under the laws of the Commonwealth of Pennsylvania, with its principal office in the City of Harrisburg, Pennsylvania, as principal, in favor of the Commonwealth of Pennsylvania, as obligee, being a depository bond executed on a form required by the Commonwealth of Pennsylvania covering a deposit of State funds with the said principal, the penalty of said bond being One Hundred Thousand and No/100 ($100,000.00) Dollars said bond having become effective December 6, 1922, now in possession of the State Treasurer of the Commonwealth of Pennsylvania, and certain moneys of the Commonwealth of Pennsylvania are now on deposit with the said Harrisburg Trust Company, Harrisburg, Pennsylvania, principal on said bond, not in excess of said penal sum of One Hundred Thousand And No/100 ($100,000.00) Dollars, and

"Whereas, the said Harrisburg Trust Company, is now solvent and actively engaged in the general business of banking in the said City of Harrisburg, under the general jurisdiction and supervision of the Secretary of Banking of the Commonwealth of Pennsylvania, and

"Whereas, said Massachusetts Bonding and Insurance Company, Boston, Massachusetts, is desirous of relieving itself of continued liability upon its aforesaid agreement, the said Surety Company is returning to the said Harrisburg Trust Company, the unearned premium on said bond.

"Therefore, you will please take notice that under the terms and provisions of Section One of the Acts of Assembly of 1874 P.L. 157 [8 P.S. § 21], and under the principles of the Common Law in full force and effect in the Commonwealth of Pennsylvania, Massachusetts Bonding and Insurance Company, Boston, Massachusetts, Surety as aforesaid on the instrument in writing for the payment of money at any future time to an amount not exceeding One Hundred Thousand And No/100 ($100,000.00) Dollars, requires you (and each of you) to collect forthwith from the Harrisburg Trust Company, the principal on said bond, any and all amounts sum or sums of money on deposit with said Harrisburg Trust Company, Harrisburg, Pennsylvania, in or under any accounts whatsoever to the credit of the Commonwealth of Pennsylvania, for the protection of which the Commonwealth of Pennsylvania looks to the said depository bond of the Massachusetts Bonding and Insurance Company, and on failure on your part to collect and secure the payment forthwith of all of said moneys, by withdrawals, confession of judgment, action at law, or otherwise, the Massachusetts Bonding and Insurance Company as surety on said bond will hold itself absolved from all liability, under or on account of its obligation under the said bond. At the time of serving this notice to the said Harrisburg Trust Company, the principal is solvent and is actively engaged in the general banking business in the City of Harrisburg, Pennsylvania, under the jurisdiction and supervision of the Secretary of Banking of the Commonwealth of Pennsylvania. In witness whereof, Massachusetts Bonding and Insurance Company has caused these presents to be executed by its lawfully constituted officers, and its corporate seal to be hereto affixed this 19th day of October, A.D., 1932."

Immediately upon receipt of the foregoing notice, the State Treasurer notified the

defendant trust company by the following letter:

"We have been notified by Massachusetts Bonding & Insurance Company, which acts as surety on your depository bond for $100,000.00, that it desires to cancel the same. While we do not concede the right of the surety to cancel the bond, nevertheless the Department of Justice feels that until the question of the right to cancel is decided by the Courts that we should insist that you substitute another bond or satisfactory collateral for your present surety bond. Please advise us promptly whether you will submit for approval by the Board of Finance and Revenue a new depository bond with different surety or in lieu thereof will deposit with us ample collateral of the character required by law to safeguard the Commonwealth's deposit."

"Let me assure you that in conjunction with the department of Justice the Treasury Department has done all in its power to avoid this contingency."

On November 21, 1932, the date of the cancellation notice, the deposits made by the Commonwealth in defendant trust company were protected by surety bonds to the extent of $1,400,000, plus collateral posted in the amount of $380,000, or a total of security amounting to $1,780,000. On that date the balance of deposits stood at the sum of $1,707,000.90

From the testimony it appears that immediately upon receipt of the letter from the State Treasurer stating that the surety had served a cancellation notice, Mr. Reily, President of the trust company went to the office of the State Treasurer. Mr. Reily's testimony thereon is as follows:

"* * * It was after, however, I discussed it very thoroughly that morning that I got this notice from the State Treasurer, I went up to see him and he told me that I would have to deposit other security or he would have to withdraw the $100,-000.00, and we talked that over and we agreed that he should withdraw the $100,-000.00 and later, if I wanted to deposit other security, he would accept it. On that same day * * *.

"He then said that he would have to withdraw the money or get other security and the bank would furnish other security later, which we did some time later, either that day or the following day he withdrew the $100,000.00 and after that, to my mind, it was finished business with us, we gave him the money at his request."

From the interrogatories filed of record substantially the same evidence appears. The answer of Mr. Reily to interrogatory number 11 is as follows: "The first notice we had of the cancellation came to us, not from the Company, but in a letter dated November 21, 1932, from Edward Martin, State Treasurer. Upon receipt of it I called at the office of John C. Orr, local agent of the Company, and was told that he had nothing further to do with the matter; it was in the hands of the District Manager in Philadelphia. Next I went up to see the State Treasurer, and we discussed the whole question of the security of State deposits, the consequences of a general cancellation of surety bonds both in regard to the banks and the Surety Companies, and the ability of each class of institution to meet its obligation if the issue was forced. He told me the Attorney General questioned the right of the Company to cancel the bond, but until the matter was settled in the Courts, he had no course but to withdraw as much of the deposit as was covered by the bond, or receive additional security. That same or succeeding day more than $100,000.00 was checked out, and some time later we furnished other security by purchasing and depositing Government bonds."

On November 21, 1932, withdrawals were made by the Commonwealth to the extent of $176,085.90 and subsequent withdrawals amounting to $1,775,592.34 were made up to December 12, 1932, upon which day the balance of the Commonwealth in defendant company was in the amount of $1,429,600.

No other surety bond to replace that of the plaintiff was presented to the State Treasurer and on June 9, 1933, the defendant trust company deposited additional collateral with the State Treasurer amounting to $220,000.

On November 30, 1932, the defendant trust company sent the following letter to the plaintiff:

"Relative to our depository bond on which the premium will be due on December 6th, we have been advised that the Commonwealth of Pennsylvania will not permit the cancellation, nor return the bond.

"We are, therefore, enclosing our check in payment of the premium due December 6, 1932."

The bond of the plaintiff herein was held by the State Treasurer until February 10, 1938, on which date it was mailed to the defendant trust company.

It is the contention of the plaintiff surety company that the notice of cancellation of November 21, 1932, had no legal effect and failed to terminate liability on the bond; that having received the notice of cancellation a burden then rested upon the defendant to terminate the liability as soon as possible; that the application of defendant for the surety bond specifically provided that the trust company would, at the request of the surety company, procure the surety company's discharge from liability and furnish the surety company with legal evidence of the termination of liability, and this was never done.

The plaintiff further contends that the transactions between the trust company and the office of the State Treasurer did not result in a termination of plaintiff's liability for the following reasons: Firstly, the deposits made by the State Treasurer with defendant trust company were credited in twenty six separate accounts, all of which were covered by plaintiff's bond, and no withdrawals were made from some of the accounts until 1933, so that the evidence presented by defendant of withdrawals made between November 21, 1932, and December 12, 1932 is irrelevant; secondly, that the withdrawals made during that period were no more than the ordinary and customary daily withdrawals; and thirdly, that because of constant deposits made by the State Treasurer the withdrawals were in fact mere "turn-overs" of funds and the subsequent deposits were made in reliance on the bond.

Plaintiff further contends that in order to invalidate the bond some formal action on the part of the State Treasurer and the Board of Revenue Commissioners was necessary.

Plaintiff also contends that the contract between the surety and the principal makes no provision for pro-rating and return of premium, and that having paid the premium for the period from December 6, 1932, to December 6, 1933, with full knowledge of the facts the defendant is bound thereby, so that the counterclaim is without merit.

It is the contention of defendant that while the notice of cancellation of itself might have been insufficient to terminate all liability, both on the bond and for payment of premiums thereafter, that subsequent action by the State Treasurer in the withdrawal of funds from defendant trust company resulted in cancellation at the time when those withdrawals reduced the balance of deposits by $100,000 and when the funds which had been deposited prior to the cancellation notice had been withdrawn. Defendant contends that this time arrived on December 12, 1932.

Defendant also contends that after receipt of notice of cancellation and after the conversation with the State Treasurer no further deposits were made in reliance upon plaintiff's bond.

Defendant further contends that having paid in advance the premium on the cancelled bond for the period from December 6, 1932, to December 6, 1933, it is entitled to the return of $983.56, with interest, as unearned premium, and counter claims therefor.

At the time the facts occurred which resulted in the present civil action, many banks throughout the nation were in difficulties and were unable to meet their obligations. Under these circumstances many surety companies desired to secure release of liability incurred on depository bonds. In the City of Harrisburg the defendant trust company alone provided a means for the Commonwealth to transact banking as the other two state depositories in the city had been closed. That is to be remembered, when, in considering the matters now before the Court, it develops that at times, the deposits of the State Treasurer exceeded the security posted for the protection of the Commonwealth funds.

The first contention of the plaintiff that the notice of cancellation was without effect and failed to result in a termination of liability is without merit. While the surety could not by its notice dissolve the contract at its pleasure (Coe v. Vogdes, 71 Pa. 383), that notice resulted in changes of position on the part of the other parties involved in that the State Treasurer withdrew funds from the depository and the depository substituted other security. This was equivalent to consent to the cancellation, and an acceptance and discharge by the other parties to the contract of the burden which rested upon them to terminate the liability within a reasonable time. While it is true that the application of the defendant for the security bond specifically provided that the defendant would, at the request of the surety company, procure the surety company's discharge from liability and furnish the surety company with legal evidence thereof, it nowhere appears that the plaintiff made any such request. Moreover, plaintiff was not entitled

to evidence of the termination of the contract because it was the moving party in seeking that termination and is charged with knowledge of the effect of its own action. In a former opinion of this Court, dated August 6, 1938, and involving the same parties, upon plaintiff's motion for judgment for want of a sufficient affidavit of defense, it was stated:

"The provision in the contract that the defendant should continue liable for premium on the bond until the plaintiff should be furnished with satisfactory legal evidence of its discharge from liability does not apply to the case where, as is alleged in the case at bar, the surety of its own initiative acts to terminate further liability regardless of the wish or consent of the principal." Massachusetts Bonding & Ins. Co. v. Harrisburg Trust Co., D.C., 24 F.Supp. 269, 270. What was, at the time of the above opinion, a mere allegation in the pleadings is now substantiated by the evidence.

■ As to the plaintiff's contention that the acts of the trust company and the State Treasurer, subsequent to the service of the notice of cancellation, were insufficient to result in a termination of liability, an examination of the evidence leads to a contrary conclusion. Although it is true that the deposits made by the State Treasurer with defendant trust company were credited in twenty-six separate accounts, all of which were covered by plaintiff's bond, yet this was a mere book-keeping transaction for the convenience of the State Treasurer and the depository. The relationship between a bank and its depositors is that of creditor and debtor and not that of trustee and cestui que trust. In re Prudential Trust Co.'s Assignment, 223 Pa. 409, 72 A. 798. This method of book-keeping was not the concern of the surety whose liability did not arise until a demand for payment had been met by a refusal to pay. The bond itself is silent in respect to the matter of any segregation of the fund and is only to secure aggregate deposits in the defendant trust company to the extent of one hundred thousand dollars. Thus the fact that certain of the accounts were not subject to withdrawal until 1933 can have no bearing upon the questions involved here. The true question is whether withdrawals were made in the aggregate sum of $100,-000 because of the notice of cancellation served by the surety.

The testimony of George W. Reily, President of defendant trust company, reveals that upon receipt of the letter from the State Treasurer, stating that the surety had served notice requiring the State Treasurer to collect forthwith from the depository all sums of money then on deposit or the surety would consider itself absolved from all liability therefor, he went to the office of the State Treasurer to discuss the matter. The pertinent testimony with regard to the intent of the parties has been fully set forth hereinbefore. The expressed intent and the subsequent acts of the State Treasurer negatives any assumption that subsequent deposits were made in reliance upon plaintiff's bond.

In execution of that expressed intent the State Treasurer, on November 21, 1932, made withdrawals in excess of the amount of plaintiff's bond and had on December 12, 1932, made a total of withdrawals in excess of the balance as it existed on November 21, 1932.

■ Plaintiff's argument that this testimony is irrelevant, that the withdrawals made on November 21, 1932, were no more than the ordinary and customary daily withdrawals and that because of constant deposits those withdrawals constituted a mere "turn-over" of funds, cannot be sustained. It is sufficient that in fulfillment of the expressed intent of the State Treasurer withdrawals were made in sufficient amounts to reduce the secured balance by the amount of plaintiff's bond. There is nothing to show that any deposits made after the State Treasurer received the notice of cancellation from the surety were made in reliance on plaintiff's bond and the evidence presented negates such a conclusion. In this respect it is to be noted that the depository subsequently posted with the State Treasurer collateral in a sum more than double the amount of plaintiff's bond, and that this was done during 1932, a period for which the plaintiff claims the right to premiums.

■ Having undertaken by the terms of its contract to be bound as surety in the same manner as the principal was bound in its undertaking, the surety could not rely upon the notice of cancellation alone to relieve it from all liability within a reasonable time thereafter. Commonwealth ex rel. v. National Surety Co., 1932, 310 Pa. 108, 164 A. 788, 89 A.L.R. 564.

It was only by reason of acts to be performed by the other parties to the contract that a release of liability could be secured. At the time of giving notice of cancellation it desired and demanded those acts to

be performed. Now, those acts having been performed, and no loss having occurred, the surety demands its premiums and requests this Court to set aside the legal effect of compliance by the obligee with the terms of the notice of cancellation. This Court refuses so to do.

A corporate surety for compensation is not within the rule that sureties are a favorite of the law but does come within the rule of strict interpretation against the surety. Commonwealth ex rel. Margiotti v. Globe Indemnity Co., 42 Dauph. 374.

It is true that no specific appropriations were made either by the State Treasurer or the depository in the matter of the withdrawal of funds. In the absence of a specific appropriation the law will provide and apply one.

"The general rule is that a debtor may appropriate his payments as he sees fit at the time of making them; but if neither he nor his creditors makes any specific application of them the law will do so. In the case of running accounts, composed of various items of debit and credit occurring at different times, and no special appropriations of the payments is made by either party, the law will apply the successive payments or credits to the discharge of the debit items antecedently due in the order of time in which they stand in the account; in other words, each item of payment or credit is applied in extinguishment of the earliest debit items in the account, until the whole payment or credit is exhausted": 1 Story's Eq. Jur. 459, a; Pierce v. Sweet, 33 Pa. 151, 9 Casey 151; Hollister v. Davis, 54 Pa. 508, 4 P. F. Smith 508; Souder v. Schechterly, 1879, 91 Pa. 83.

By the application of the above rule it is seen that all liability of the plaintiff was extinguished by those withdrawals, and this by reason of and in compliance with its own request, and that full extinguishment of that liability occurred on December 12, 1932.

The equities involved in this matter require that the instant contract of surety and the circumstances surrounding and emanating from its cancellation notice be most strictly construed against the plaintiff herein.

In considering the economic circumstances which gave rise to plaintiff's desire to terminate its liability no doubt can exist that if a default had occurred upon the part of the depository in meeting the demand for withdrawals the surety would have denied liability because of the cancellation notice. The surety undoubtedly would also have denied liability because of the subsequent substitution of additional collateral by the depository, and could also plead that the very withdrawals which it attacks here as insufficient to terminate liability were in fact a release of liability.

Retention of the bond itself by the State Treasurer can have no effect upon the rules which govern the decision in this case. The refusal of the State Treasurer to concede the right of the surety to cancel the bond was correct. That cancellation could not have been effected by the surety alone. The State Treasurer of necessity denied the right of the surety to cancel its obligation until sufficient time had elapsed to enable him to make the necessary withdrawals from the depository and protect the rights of the Commonwealth. Thereafter, retention of the written instrument evidencing the agreement between the parties thereto was meaningless. The surety may complain of a lack of notice of these facts but it had the right to inquire into them and failed to do so. It cannot therefore rightly complain of the consequences of its own act which set the subsequent train of events in motion.

It is nowhere apparent that if after December 12, 1932, the plaintiff had demanded the return of its bond from the State Treasurer, the demand would not have been honored. In answer to the fifteenth interrogatory the President of defendant trust company stated: "Every time I talked to one of the (surety) company's representatives I told him we had no further connection with it. It was a matter between the Attorney General and them and if the State wanted to return the bond we were satisfied. We did not know it had not been returned. * * *" The bond had been retained by the state and not by the principal in the bond which would have been well satisfied to return the bond and secure a cessation of premium payments upon what it must have believed to be a most doubtful, if not invalid, security.

Plaintiff contends that in order to invalidate the bond some formal action on the part of the State Treasurer and the Board of Revenue Commissioners was necessary and in support of that contention cites the case of Commonwealth v. Caldwell, 224 Pa. 103, 73 A. 219. In that case it was held, quoting from the syllabus:

"1. Under the Acts of June 15, 1897, P.L. 157, and February 17, 1906, P.L. 45 [72 P.S. § 3771 et seq.], the state treasurer has the primary right to take the bonds of the state depositories, but the bonds are not effective until they are approved by the board of revenue commissioners and the banking commissioner. The function of the board and the banking commissioner is limited to the approval of the bonds. They cannot take the initiative either in taking or surrendering a bond. The treasurer cannot accept a bond without the approval of the board, and the board cannot surrender a bond without the approval of the treasurer.

"2. A surety on a bond given under the Act of June 15, 1897, P.L. 157, to secure repayment of deposits made by the state treasurer, is not discharged from liability thereon by the adoption of the board of revenue commissioners and the banking commissioner, of a resolution authorizing the surrender of such bond, and the acceptance of other bonds in its place. The state treasurer may ignore such a resolution, retain the bond, and hand it on to his successor."

This Court holds the opinion that the Caldwell case is inapplicable here. The State Treasurer is by law made the custodian of all state funds. It is his duty to receive, disburse and account for them. It cannot be held that where he receives such a notice of cancellation as was received in the instant case he cannot undertake a course of independent action to guard the funds of the Commonwealth theretofore protected by the bond.

Finally, plaintiff contends that the contract between the surety and the principal makes no provision for pro-rating and return of premiums and that having paid the premium for the period from December 6, 1932, to December 6, 1933, with full knowledge of the facts the defendant is bound thereby and is estopped from pressing its counterclaim.

In support of the above contention plaintiff refers to the letter of defendant trust company to the surety dated November 30, 1932, hereinbefore copied in full, which stated that the Commonwealth would not permit the cancellation nor return the bond, and which letter accompanied the check for the payment of premium for the period from December 6, 1932, to December 6, 1933.

This final contention of plaintiff is likewise untenable. It is to be remembered that this letter was written only nine days after notice of cancellation had been given the State Treasurer. If at that time uncertainty existed on the part of the defendant as to questions subsequently resolved by the actions of the State Treasurer, it was the fault of the plaintiff and not of the defendant. The tender of payment by the defendant was under the circumstances proper and commendable as it was intended, because of the question presented by the cancellation notice, to make doubly certain that the funds of the Commonwealth were fully protected. It will not now be penalized for that act. On the contrary it is the plaintiff which is estopped from claiming premiums after the principal and the creditor had undergone substantial changes of position made necessary by the cancellation notice. In that very notice of cancellation plaintiff agreed to return to defendant the unearned premium on the bond; an offer which the plaintiff failed to accompany with payment. It is true that no provision existed in the bond for the return or prorating of any portion of the premium, but plaintiff at the time of the cancellation notice took a position beyond the wording of its contract and cannot now take refuge behind the contract which it dishonored.

In his concurring opinion in the case of Commonwealth ex rel. v. National Surety Co. et al., supra, 310 Pa. 108, on page 118, 164 A. 788, at page 791, 89 A.L.R. 564, Mr. Justice Maxey stated in a similar case: "Surety companies must accept the burdens as well as the benefits of their business. For many years they have been 'insuring' state deposits in the banks of the commonwealth with only negligible risk and with considerable profit to themselves. Now when the funds of the commonwealth deposited in the banks must need the protection which the surety companies have been paid to supply, these companies propose to withdraw that protection. If life insurance companies should seek to cancel their policies whenever an epidemic sweeps across the country, that situation would be analogous to what the surety companies are trying to do in the circumstances revealed to us in the instant cases.

"The economic and financial disaster that would befall this commonwealth if all the surety companies which have insured the deposits of state funds in banks possessed the power of cancellation they now claim and should imperatively demand the state's immediate withdrawal of such deposits upon

pain of having the surety bonds canceled, would be comparable to what befell the nation when the federal deposits were removed from the Bank of the United States and its twenty-five branches in 1833. It would be an anomalous situation if the courts which in matters officially before them are vested with the power to express the will of the sovereign would give such expression to that sovereign will as would inevitably bring ruin to the commonwealth."

Throughout this entire transaction the plaintiff herein has evidenced a desire to eat its cake and have it too; a desire that the apparent equities involved cannot permit to be fulfilled.

The requests of both parties for findings of fact and conclusions of law have been answered separately and filed of record.

And now it is ordered that judgment be entered in favor of the defendant, Harrisburg Trust Company and against the plaintiff, Massachusetts Bonding and Insurance Company, in the amount of Nine Hundred Eighty-three and 56/100 Dollars ($983.56), together with interest computed thereon at the rate of six per centum per annum from the 12th day of December, 1932.